## Jenkins Township School Directors' Removal Case.

Argued January 13, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*W. L. Pace,* for appellants.

*J. Earl Langan,* for appellees.

OPINION BY MR. JUSTICE MAXEY, March 23, 1942:

This is an appeal by three men from the order of the court below removing them from the office of school director of Jenkins Township, Luzerne County. One removed director did not appeal. The proceedings below were initiated on October 10, 1940, by taxpayers, proceeding under Section 217 of the School Code. The first petition filed listed thirteen alleged violations of the School Code. On January 16, 1941, ten additional reasons were filed for the removal of the respondents. When the first petition was filed, a petition was also presented asking the Court to impound the records of the school district. This was granted, but on the night of October 8th, the office where these records were kept was broken into and the records stolen. On December 1, 1941, the appellants were removed from office by the Court. In its judgment of ouster the Court said: "We find that the three respondents were parties to the deliberate destruction of the school records, viz., minute book, ledger, 'The Uniform Accounting System' and cancelled checks, and conclude, as a matter of law, that such conduct warrants their removal."

The court also found that the respondents as school directors violated section 2 of the Act of May 16, 1939, P. L. 139, which provides that "for the payment of the

principal and interest of the bonds created under the provisions of this act and any taxes covenanted to be paid thereon, the governing bodies of the municipalities or quasi municipalities issuing the same shall annually . . . levy and collect . . . a tax sufficient to pay the interest and principal of said indebtedness. . . ." It also provides that "such tax" when "paid into the treasury" shall be kept . . . in a fund to be called Emergency Sinking Fund and shall be applied to the redemption of said bonds . . . and to no other purpose whatsoever. . . . ."

The court found that the respondents failed to keep the "Sinking Fund" tax "separate and distinct from all the other funds of the district" and that their failure was a breach of a mandatory duty and justified their removal from office.

No other grounds for removal were found in this order of December 1, 1941. The order was excepted to by these three appellants and an appeal was taken and this court on December 16, 1941, granted a supersedeas. Ten days later, counsel for the original petitioners asked the court to supplement the decision of December 1, 1941, with particular references to the allegation contained in paragraph 6, subsection 11 of the original petition, which reads as follows: "That the budget for 1939-1940 appropriated the sum of $26,574.00 to be paid from the General Fund to the Sinking Fund as the actual amount needed to pay bonds and coupons becoming due in that school year. That the sum of $18,300.00 only was paid and default was made, inter alia, in the payment of coupons due June 15, 1940, in the sum of $1,650.00." The court on the same day filed an opinion by Judge VALENTINE, in which he said, inter alia: "At the time of the passage of the Act of July 2nd, 1937, P. L. 2860, School Code, Section 518, the School District had various bond issues outstanding. It appears that a sinking fund was, in fact, established by the District. . . . There is no doubt that the requirement of Section 519 of the Code

was not complied with, in that during the fiscal year above referred to, 1939 to 1940, the sum of $20,094.00, appropriated to the sinking fund, was not deposited therein. The deposits made to said fund during said period amounted to the total sum of $12,000.00. . . . The respondents were not obliged to establish a sinking fund, in that they issued no bonds subsequently to the passage of the Act of 1937, supra. However, they did establish such fund, and, under the circumstances, we are of the opinion that they were under the obligation of depositing 'all the funds appropriated to such sinking fund . . . in a special account' as required by Section 519 of the Code. We believe this to be an additional reason for the entry of the judgment of ouster."

Section 519 of the School Code, (Act of May 18, 1911, P. L. 309, Article V, section 519, p. 336, [24 P. S. sec. 502, p. 139]) provides as follows: "The sinking-fund in any school district establishing the same shall be under the supervision of a sinking-fund committee, composed of the president, treasurer, and one additional member of the board of school directors to be designated by it. All the funds appropriated to such sinking-fund shall be deposited in such designated depository as offers the best rate of interest, security, and safety; which funds shall be kept in a special account, and shall be used only to liquidate the school indebtedness existing at the time of the approval of this act, and interest thereon, and are to be paid out by the district on school orders which shall first be approved by a majority of the members of the sinking-fund committee."

As to the school records, counsel for the appellees concedes in their paper book that "in view of the decision in Davis' Appeal, 314 Pa. 357 . . . the appellants . . . probably could not be removed from office without first being convicted of their participation in their destruction." The Act of June 24, 1939, P. L. 872, section 323, [18 P. S. 4323, p. 179] provides that "Any public officer or other person who fraudulently makes a false entry in,

or erases, alters, secretes, carries away, or destroys any public record, or any part thereof, is guilty of a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding one thousand dollars ($1,000), or undergo imprisonment by separate or solitary confinement at labor not exceeding two (2) years, or both." It is obvious that if a person is charged with the crime defined in the act just quoted, he is entitled to a jury trial. We said in *Davis' Appeal*, supra, ". . . One accused of crime shall not be punished in any way therefor unless he shall have been first convicted thereof by a jury of his peers." If there is persuasive evidence that these directors or any of them fraudulently secreted, destroyed or carried away a public record of the school district, he or they should be prosecuted in the manner provided by law.[1]

Nor can the removal of these directors be justified by their alleged violation of section 2 of the Act of May 16, 1939, P. L. 139. This was an act "to meet the emergency occasioned by the extraordinary decrease in tax collections due to business depression and widespread unemployment" and it made it "lawful for any county, city, borough, township of the first and second class, and school districts to issue and sell, at not less than par, bonds bearing interest at a rate not exceeding six per cent per annum, payable in not more than ten years from the date of said bonds, in an amount not exceeding eighty

---

[1] Respondents denied that they stole the missing records or had anything to do with their theft. On the contrary they aver that when the first petition for the directors' removal was being circulated, certain persons "for the sinister purpose of depriving respondents of the opportunity and privilege of producing documentary proof in support of the facts in said answer" (i. e., the answer filed by respondents on November 30, 1940) ". . . feloniously broke into the high school building . . . and removed therefrom important records . . . for the purpose of embarrassing respondents in the establishment of the facts evidenced thereby." The charges against the respondents of destroying these records was made in an amended petition filed on January 16, 1941, and signed by nine of the twenty-two signers of the original petition, and by two other "resident taxpayers".

per cent of the amount of uncollected taxes due on real estate at the date of the enactment of the ordinance or the adoption of the resolution authorizing such action, less a sum sufficient to pay the interest and taxes covenanted to be paid thereon." The act further provides that "for the purpose of creating a sinking fund for the payment of the principal and interest of the bonds created under the provisions of the act . . . the governing bodies . . . shall levy a tax sufficient to pay the principal and interest of said indebtedness . . ." Section 4 provides as follows: "Any person who shall, directly or indirectly, apply or use any of said uncollected taxes to or for any purposes other than to deposit the same in the emergency sinking fund shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined in a sum not exceeding one thousand dollars ($1,000), or imprisoned for a term not exceeding one (1) year, or either or both, in the discretion of the court."

This "emergency act" of 1939 did not purport to be an amendment to the School Code of 1911, and it applied to counties, cities, boroughs and certain townships as well as school districts. There is no provision in this act for the removal of any public official who violates it. There are in the act penal provisions for its violation and under the authority of *Davis' Appeal,* supra, a person accused of violating this act is entitled to a jury trial. Section 217 of the School Code of 1911, 24 P. S. 180, clothes the courts of common pleas with power to remove school directors for the neglect of "any duty imposed on said board of directors which is by the provision of this act made mandatory upon them to perform." By no permissible construction can the Act of 1939 be incorporated into the School Code of 1911 so as to make a breach of any duty the Act of 1939 creates ground for the removal of a school director by a court of common pleas in the exercise of the power given that court in the just quoted provision in the School Code. The courts have no arbitrary power to remove school directors. "Statutes

providing for the removal of officers are generally held to be penal in their nature, and should be strictly construed.": 46 C. J., section 145, p. 984.

This being the state of the law it is unnecessary to discuss the evidence offered to prove the alleged violation of the Act of 1939, other than to say that under the pleadings relative to this averment, the proof offered is confused and unsatisfactory. If the appellants did in fact violate this Act of 1939, they can be prosecuted criminally and that would be the proper remedy to pursue.

Ten days after the granting of a supersedeas in this case, by this court, the court below (as above noted) filed a "supplemental opinion . . . in support of the judgment previously entered." The opinion declared: "The respondents were not obliged to establish a sinking fund, in that they issued no bonds subsequently to the passage of the Act of 1937. However they did establish such a fund." Appellants not only deny that they ever established such a fund but go further and claim that under the law they were not authorized to established such a fund, that if one had been established it would have been merely a matter of bookkeeping and not a sinking fund in any legal sense.

The evidence of the establishment of a sinking fund by the board is meager and unsatisfactory. No school records are before us to prove the fact alleged, for the records have disappeared. The court below held that "the bank records show this fact," i. e., the establishment of a sinking fund. The bookkeeper of the Miners Savings Bank of Pittston was called by the petitioners. He was asked by their attorney: "Can you give us the balance in the sinking fund [of the School District in question] as of the first day of July 1939?" He replied: "Yes, sir, $8,382.87." Later in his testimony he referred to what the attorney had called a sinking fund account as "the Bond and Coupon Account". It is not shown that the bank carried what was in legal effect a sinking fund account of this school district.

Appellants further contend that there was no legal warrant for this school district to establish a sinking fund as that referred to in sec. 519 of the School Code, and that therefore they could not be guilty of a breach of a mandatory duty in respect to such a fund. They point out that under section 518 of the School Code of 1911 "Any school district . . . which assumed, and is hereby required to pay, any school indebtedness *existing at the time of the approval of this act* [italics supplied] may establish a sinking fund for the purpose of liquidating the same." The duty with whose breach the respondents are charged is defined in the following section 519 and the sinking fund referred to in that section is obviously the sinking fund whose establishment is authorized in section 518. If the school district in question had what was officially designated as "a sinking fund" (and whether it did or did not is doubtful under this evidence) it was not to pay an indebtedness *existing at the time of the approval of the Act of 1911* and therefore it was a "sinking fund" which existed only as a matter of bookkeeping and not in legal contemplation. This section 518 was amended by the Act of July 2, 1937, P. L. 2860, sec. 4 (1941 Annual Pocket Part of Purdon's Statutes, sec. 501, p. 46). The Act of 1937 provided that "any school district . . . which *hereafter incurs any bonded indebtedness,* [italics supplied] shall, at or before the time of so doing, levy and provide for the collection of an annual tax sufficient for the payment thereof, together with interest, as per the schedule of maturities in the bond proceedings as provided in this act, and shall establish a sinking fund for the purpose of payment of such bonds." The bonds for the redemption of which the so-called "sinking fund" as to which the appellants alleged breach of duty relates were not evidences of "any bonded indebtedness" incurred after the Act of 1937 became effective. The court below pointed that out, as above noted. It is equally clear that the bonds for whose redemption the appellants are charged with *not* maintaining a sink-

ing fund containing all the funds appropriated to it were not evidences of any school district indebtedness *existing on May 18, 1911.* They evidenced indebtedness created during the years intervening 1911 and 1937.[2] It follows that the establishment of a sinking fund to provide for the payment of the bonds involved in this phase of this case was not a duty imposed by the School Code upon these directors and "made mandatory upon them to perform". This being the fact it further follows that if there was a failure to deposit in any account, whether it was called a "sinking fund" or a "bond and coupon account", all the funds appropriated thereto it would *not* constitute a breach of a mandatory duty under the School Code.

The specific charge in respect to this failure to make deposits in the "sinking fund" is that though $20,094[3] was appropriated to it only $12,000 was deposited in it. The records of the Miners Savings Bank of Pittston, Depository, show the following entries relevant to this charge:

"BOND AND COUPON ACCOUNT
Issue of 1916, 1923 and 1926
Miners Savings Bank of Pittston, Depository
Beginning Balance and Receipts

Balance, July 1, 1939 . . . . . . . . . . . . . . . . $ 8,382.87
Deposit Oct. 13, 1939 . . . . . . .$7,000.00
Deposit Nov. 15, 1939 . . . . . . . 5,000.00

Total Balance and Receipts . . . . . . . .$20,382.87"

---

[2] This school district has had since its establishment, four bond issues, the first three of them being in the years 1916, 1923 and 1926, all under section 506 of the School Code, and the fourth bond issue being in the year 1939 under the "emergency act" of 1939, supra.

[3] This charge was made in section 11 of paragraph 6 of the original petition. (See 4th paragraph of this opinion). Opposing counsel agree that the figure $26,570.00 in section 11 should read $20,094.00 and the figure $18,300.00 should read $12,000.00.

The audit shows "Total Bonds and Coupons Paid $20,-350. July 1, 1940 Balance in account $32.87." When the above balance was taken certain coupons due June 15, 1940, series No. 28 of the 1926 issue, "had not been presented for payment". These amounted to $1650. The record shows that each year for several years there had been coupons aggregating many hundreds of dollars which were presented for payment long after they were due, and appellants argue that when $12,000 was deposited in the "Bond and Coupon Account" which already had a balance of $8,382.87, *enough* money was provided, in the light of the experience of preceding years, for the payment of the coupons *likely to be presented*. This proved to be the fact, as the $32.87 balance indicated. While this would not be a legally valid excuse for breach of the duty prescribed by section 519 to deposit "all the funds appropriated to such sinking fund" and to "keep them in a special account" if such a legal sinking fund had been established for the payment of "an indebtedness existing at the time of the approval of this act" i. e., May 18, 1911, or any indebtedness incurred after the effective date of the Act of July 2, 1937, supra, it would nevertheless be a proper matter for a court to consider on a petition for the removal of school directors. It would throw light on the question whether the school board was wilfully violating the applicable provision of the School Code or whether it was acting in good faith and honestly believed that all that the law required was to maintain in the sinking fund sufficient to meet the payments of all bonds and coupons which according to the experiences of former years would likely be presented for payment. Even for a breach of a mandatory duty under the School Code, a court is not *required* to remove a board of directors; it is simply *empowered* to do so. In *White et al. v. Moore et al.*, 288 Pa. 411, 417, 136 A. 218, this court in reversing the decree of the court below which removed school directors said: "To deprive a person of office because of

failure to follow mandatory duties prescribed by statute, the further result of which is also to deprive him of eligibility for the same office for a period of five years, is a drastic procedure and before such penalty is imposed there should be at least clear proof of breach of duty. In our opinion the record before us fails to disclose such clear breach of duty."

The other charges made in the petition filed in this case were not pressed. We have discussed all the charges requiring discussion. We find in this record no legal reason for the removal of these appellants.

The decree of the court below is reversed and the petition is dismissed.