**6**

Burton HETHERINGTON, Julian Milewski, David Zienkiewicz, Cynthia Zienkiewicz, Jason Milewski, Peggy Forgotch, Joseph Clews, Kelly Moran, David Seresky, Grace Glowacki, Charles Hampton, Anna Mae Hampton, John Anczarski, Joseph Clews, Raymond Smith, Cynthia Smith, David Hampton, Lynn Lentes, Debra Hampton, John Uroskie, David Banning, Robert Wise, Barbra Wise, Dale Kimmel, Lena Kimmel, John Rumbel, Michelle Rumbel, Cathy Shoup, Roger Shoup, Raymond Mishlanie, Carol Mishlanie, Debra Grow, Robert O. Ororco, Albert Breznik, Jr., Leon Trusky, Haley Dunlap, Mary Anczarski, Leon Lowandowski, Nancy Stauffer, David Briggs, Edward Glembockie, Margret Hunsinger, James Ambrose, Susan Briel, Eileen Teeter, Dennis Teeter, Mary Milosh, Melissa McGruffie, Bobbie Jo Edmonson, Edward Sanchez, Joseph E. Faust, Jr.

v.

William ROGERS, President, NSSB, Jane Rapant, Vice President, NSSB, Christine Heyer, Treasurer, NSSB, Robert Wetzel, Former President, NSSB, Phil Rapant, Robert Orth, John Motsney, Edward Balkiewicz, John Misiewicz, and Attorney Mark Semanchik.

Appeal of: John Misiewicz.

Burton Hetherington, Julian Milewski, David Zienkiewicz, Cynthia Zienkiewicz, Jason Milewski, Peggy Forgotch, Joseph Clews, Kelly Moran, David Seresky, Grace Glowacki, Charles Hampton, Anna Mae Hampton, John Anczarski, Joseph Clews, Raymond Smith, Cynthia Smith, David Hampton, Lynn Lentes, Debra Hampton, John Uroskie, David Banning, Robert Wise, Barbara Wise, Dale Kimmel, Lena Kimmel, John Rumbel, Michelle Rumbel, Cathy Shoup, Roger Shoup, Raymond Mishlanie, Carol Mishlanie, Debra Grow, Robert O. Ororco, Albert Breznik, Jr., Leon Trusky, Haley Dunlap, Mary Anczarski, Penny Brouse, Robert Wollyung, Leon Lowandowski, Nancy Stauffer, David Briggs, Edward Glembockie, Margret Hunsinger, James Ambrose, Susan Briel, Eileen Teeter, Dennis Teeter, Mary Milosh, Melissa McGruffie, Bobbie Jo Edmonson, Edward Sanchez, and Joseph E. Faust, Jr.

v.

William Rogers, Jane Rapant, Christine Heyer, Robert Wetzel, Phil Rapant, Robert Orth, Edward Balkiewicz, John Motsney, John Misiewicz, and Mark Semanchik, Esq.

Appeal of: William Rogers, Jane Rapant, Christine Heyer, Robert Wetzel, Phil Rapant, Edward Balkiewicz, John Motsney, and Mark Semanchik, Esq.

Burton Hetherington, Julian Milewski, David Zienkiewicz, Cynthia Zienkiewicz, Jason Milewski, Peggy Forgotch, Joseph Clews, Kelly Moran, David Seresky, Grace Glowacki, Charles Hampton, Anna Mae Hampton, John Anczarski, Joseph Clews, Raymond Smith, Cynthia Smith, David Hampton, Lynn Lentes, Debra Hampton, John Uroskie, David Banning, Robert Wise, Barbra Wise, Dale Kimmel, Lena Kimmel, John Rumbel, Michelle

Rumbel, Cathy Shoup, Roger Shoup, Raymond Mishlanie, Carol Mishlanie, Debra Grow, Robert O. Ororco, Albert Breznik, Jr., Leon Trusky, Haley Dunlap, Mary Anczarski, Penny Brouse, Robert Wollyung, Leon Lowandowski, Nancy Stauffer, David Briggs, Edward Glembockie, Margret Hunsinger, James Ambrose, Susan Briel, Eileen Teeter, Dennis Teeter, Mary Milosh, Ruth Milosh, Melissa McGruffie, Bobbie Jo Edmonson, Edward Sanchez, Joseph E. Faust, Jr.

v.

William Rogers, Jane Rapant, Christine Heyer, Robert Wetzel, Phil Rapant, Robert Orth, John Motsney, Edward Balkiewicz, John Misiewicz, and Attorney Mark Semanchik.

Appeal of: William Rogers, Jane Rapant, Christine Heyer, Robert Wetzel, Phil Rapant, John Motsney, Edward Balkiewicz and Attorney Mark Semanchik.

Commonwealth Court of Pennsylvania.

Argued March 15, 2010.
Decided Sept. 27, 2010.
As Amended Oct. 25, 2010.

Michael D. Kristofco, Blue Bell, for appellant, John Misiewicz.

Victor P. Stabile, Harrisburg, for appellants, William Rogers, Jane Rapant, Christine Heyer, Robert Wetzel, Phil Rapant,

Edward Balkiewicz, John Motsney, and Mark Semanchik, Esq.

Lloyd R. Hampton, Ashland, for appellees.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

■ John Misiewicz, William Rogers, Jane Rapant, Christine Heyer, Robert Wetzel, Phil Rapant, Edward Balkiewicz, John Motsney and Mark Semanchik, Esq., (together, Ex–Directors) appeal from: (1) the June 23, 2009, order of the Court of Common Pleas of Schuylkill County (trial court), which granted a petition to remove the Ex–Directors from their positions on the North Schuylkill School District (School District) School Board pursuant to section 318 of the Public School Code of 1949 (Code);[1] and (2) the trial court's

June 25, 2009, order, which amended the June 23, 2009, order by appointing four individuals[2] to replace four of the Ex–Directors on the School Board.[3] We affirm.

On April 19, 2007, Dr. Robert Franklin, School District Superintendent, submitted his resignation, effective June 29, 2007, to the School Board. At a meeting on May 30, 2007, the School Board appointed Dr. Gerald Nesvold as Acting Superintendent.[4] From June 15, 2007, through June 17, 2007, the School District advertised for applicants for the position of Superintendent, requiring candidates to have an earned doctorate with extensive knowledge and experience in labor relations and school law.

The School Board received eight applications during the period from June 25, 2007, to September 18, 2007. Among the applicants were Dr. Regina Palubinsky, Dr. Michael Baird, Dr. Donald Golden and Dr.

---

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 3–318. Section 318 of the Code states, in pertinent part, that, if the board of school directors in any district "refuse[s] or neglect[s] to perform any duty imposed upon it by the provisions of this act," resident taxpayers in the district may present a petition in writing setting forth the facts, and the court "shall grant a rule upon the school directors to show cause why they should not be removed from office." *Id.*

> If ... the court shall be of the opinion that any duty imposed on the board of school directors, which is by the provisions of this act made mandatory upon them to perform, has not been done or has been neglected by them, the court shall have power to remove the board, or such of its number as in its opinion is proper, and appoint for the unexpired terms other qualified persons in their stead....

24 P.S. § 3–318. The trial court concluded that the Ex–Directors failed to perform their statutory duty to "elect a properly qualified person as district superintendent...." Section 1071(a) of the Code, 24 P.S. § 10–1071(a).

2. The four individuals had "won election in both the Democratic and Republican primary elections to replace [four of the] removed school board members effective January, 2010." (Trial ct.'s 6/25/09 order n. 1.)

3. The Ex–Directors, except for Misiewicz, also filed an appeal from the July 22, 2009, order of the trial court, which denied a motion for reconsideration and a motion to amend pleadings. We note, however, that an order denying a motion for reconsideration is not an appealable order. *Thorn v. Newman,* 113 Pa.Cmwlth. 642, 538 A.2d 105 (1988).

4. Section 1079 of the Code states, in pertinent part, as follows:

> Whenever a board of school directors finds it impossible or impracticable to fill immediately any vacancy occurring in the position of district superintendent or assistant district superintendent, the board may appoint an acting district superintendent or an acting assistant district superintendent to serve not longer than one year from the time of his appointment.

24 P.S. § 10–1079.

Sandra Reed. All were certified to hold the position of Superintendent, and all but Dr. Palubinsky had received their doctorates. Dr. Palubinsky had completed requirements for a doctorate and was merely awaiting formal issuance of the degree. All had more than six years teaching experience, more than three years supervisory or administrative experience and had completed graduate programs in education that included leadership standards required by statute.[5] The School Board never contacted any of the applicants.

Instead, at a meeting on June 27, 2007, the School Board approved the submission of a Mandate Waiver Application to the Pennsylvania Department of Education (Department), requesting that the Department waive the Superintendent eligibility requirements and allow the School Board

to name its Solicitor, Mark Semanchik, as the School District's Superintendent.[6] Specifically, the School Board sought waivers from the eligibility requirements set forth in sections 1003(2), (3) and (4) of the Code and in 22 Pa.Code §§ 49.172(a)(1) and (3).[7] (Appellee's R.R., Item 13.)

By letter dated September 6, 2007, the Department denied the Waiver Application, stating that it is the Department's policy to waive the eligibility requirements for superintendents only where: (1) the school district is designated as an Empowerment District or Distressed District; or (2) the school district provides documentation that the individual to be appointed has completed training in lieu of certification of eligibility. (Appellee's R.R., Item 14.)

On September 20, 2007, without contacting the applicants for the vacant Superin-

---

5. Section 1003 of the Code states, in pertinent part:

No person shall be eligible for election or appointment as a district, or assistant district superintendent, unless—

. . . .

(2) He has had six (6) years' successful teaching experience, not less than three of which shall have been in a supervisory or administrative capacity;
(3) He has completed in a college or university a graduate program in education approved by the Department of Education that includes the Pennsylvania school leadership standards under section 1217 [of the Code, 24 P.S. § 12–1217]. **Completion of the program shall not be subject to waiver under section 1714–B [of the Education Empowerment Act,** Act of March 10, 1949, P.L. 30, added by section 8.1 of the Act of May 10, 2000, P.L. 44, *as amended,* 24 P.S. § 17–1714–B,] **unless** the candidate provides to the Secretary of Education evidence that the candidate has successfully completed an equivalent leadership development program that addresses the school leadership standards under section 1217.
(4) Provided that in school districts of the first class, five (5) years of administrative experience at the level of assistant, associate or deputy superintendent, may be sub-

stituted for prescribed graduate administrative courses. . . .
24 P.S. § 10–1003 (emphasis added).

6. Section 1714–B(a) of the Education Empowerment Act states that, "[e]xcept as otherwise provided by this section, the board of school directors may adopt a resolution to apply for a waiver to any provision of this act . . . if the waiver will enable the school district to improve its instructional program or operate in a more effective, efficient or economical manner." 24 P.S. § 17–1714–B(a).

7. The regulation states:

(a) The Department will issue the appropriate letter of eligibility for consideration for appointment as a district superintendent or an assistant district superintendent to an applicant who:
(1) Has completed a Pennsylvania approved graduate level program of educational administrative study for the preparation of chief school administrators. . . .
(3) Has provided evidence of 6 years of certified service in the basic K–12 schools and, for the superintendent's letter, including at least 3 years of satisfactory certified service in supervisory or administrative positions.
22 Pa.Code § 49.172(a)(1) & (3).

tendent position to determine whether it was impossible or impracticable to immediately fill the vacancy with one of the qualified persons, the School Board appointed Semanchik as Acting Assistant Superintendent, effective October 1, 2007, for the balance of the school year at a salary of $82,500 and benefits.[8] After October 1, 2007, Acting Superintendent Nesvold only came to his office one day each week. Semanchik ran the School District. Although the School Board passed no resolution and took no public vote on the matter, at some point, the School Board agreed to pay for Semanchik to acquire a graduate degree in education.[9]

Although the graduate degree requirement could not be waived absent appropriate training, at a meeting on February 21, 2008, the School Board approved an Amended Mandate Waiver Application, seeking a waiver of that requirement and others. The School Board stated that Semanchik "assumed full responsibility for the operation of the [School District] as the Acting Assistant Superintendent as of October 1, 2007...." (Appellee's R.R., Item 17.) The School Board promised that Semanchik would report his progress in fulfilling the eligibility requirements and that Semanchik would complete a graduate degree and Letter of Eligibility Program within two years. *Id.* The application contained an Affirmation stating that the School Board's Solicitor, i.e., Semanchik, reviewed the application and determined that the requested waivers would not violate any state law.[10] *Id.*

By letter dated April 24, 2008, the Department denied the School Board's Amended Mandate Waiver Application, stating:

**As the Department indicated in its prior letter to the district,** Mark Semanchik, the superintendent candidate at issue in the waiver application, has not *completed* a Letter of Eligibility program approved by the Department. We also note that Mr. Semanchik is not a full-time school administrator or employee. Because Mr. Semanchik has not completed an approved program and

---

**8.** According to Dr. Nesvold, there are no requirements for an interim position and a school district could hire "Mickey Mouse" or the "janitor" for a year. (R.R. at 206a, 210a.) We note that: (1) Semanchik was not eligible to be an Assistant Superintendent because he did not meet the eligibility requirements set forth in section 1003 of the Code for Assistant Superintendents; and (2) the School Board could not have obtained a mandate waiver for Semanchik to serve as Assistant Superintendent because the requirement for a graduate degree in education in section 1003(3) of the Code cannot be waived absent appropriate training in leadership development.

**9.** In its Mandate Waiver Application, the School Board suggested that it could not afford to hire a qualified person as Superintendent, stating that hiring Semanchik would "relieve the [School Board] of costs associated with suitably qualifying a traditional candidate." (Appellee's R.R., Item 13.) However, the School Board did not indicate that it was

expending money to qualify its nontraditional candidate, Semanchik.

**10.** However, granting a waiver of the graduate degree requirement, which is not subject to waiver absent appropriate training, arguably would violate section 1003(3) of the Code. We note that, despite the Affirmation, Semanchik testified that he actually did **not** review the document for legality. (R.R. at 345a–46a.)

We also note that, under section 1103(a) of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. §§ 1103(a), no public employee shall engage in conduct that constitutes a conflict of interest, which is defined in section 1102 of the Ethics Act, 65 Pa.C.S. § 1102, to include use of one's employment for the private pecuniary benefit of himself. In *P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174 (1999), our Supreme Court held that a solicitor is subject to the conflict of interest provisions of the Ethics Act.

does not have relevant experience as a school administrator, a waiver is not appropriate at this time.

(Appellee's R.R., Item 18) (bolding added) (italics in original).

Although the School Board failed to obtain a waiver for Semanchik through its patently meritless Waiver Application, at a meeting on May 15, 2008, the School Board approved the appointment of Semanchik as Acting Superintendent, effective July 1, 2008, for the following school year at a salary of $110,000 and benefits. Prior to doing so, the School Board did not contact any of the applicants for the Superintendent position to determine whether it was impossible or impracticable to immediately fill the Superintendent vacancy with a qualified person.

On April 29, 2009, the School Board approved a third Mandate Waiver Application. The School Board stated that Semanchik had successfully completed the requirements for a graduate degree in education and the requirements for a letter of eligibility for appointment as a district superintendent.[11] The School Board sought a waiver from section 1003(2) of the Code and 22 Pa.Code § 49.172(a)(3), which require six years of teaching, including three years in supervisory or administrative positions. The School Board pointed out that Semanchik now had experience as an Acting Assistant Superintendent and Acting Superintendent. (Appellee's R.R., Item 20.)

A petition for removal of the Ex–Directors was filed with the trial court pursuant to section 318 of the Code. The trial court concluded that the Ex–Directors failed to elect a properly qualified Superintendent, a mandatory duty under section 1071(a) of the Code. The trial court stated:

Two years have passed since the [School District] has had a qualified superintendent and, during that time period, the School Board has been engaged in a **conflicted journey** in an attempt to seat an as-yet unqualified individual lacking teaching experience and supervisory educational experience into the educational leadership position of that school district. The acting superintendent/solicitor is in a **conflicted position** of providing legal advice to the School Board, he being a non-voting member of that Board, in a matter in which he has a direct pecuniary interest. Attorney Semanchik has placed himself in a position where he is giving himself and voting members of the School Board advice in a matter involving his own personal interests.

(Trial ct. op. at 3) (emphasis added).

Today, more than two years after being informed that Dr. Franklin was resigning as District Superintendent, the North Schuylkill School Board remains without a qualified school superintendent because of the [School Board's] failure to comply with the mandate of Section 10–1071 of the School Code. Rather than doing so, the evidence presented to this Court demonstrated a **conflicted relationship** between the then–Solicitor, who was seeking to ascend to the position of superintendent, and the Board, in an attempt to ultimately seat Mr. Semanchik as Superintendent. The efforts of the school board to seat a qualified superintendent were nonexistent.... **[T]he Board, in concert with the school Solicitor, embarked upon a**

---

**11.** Semanchik could not have possessed a letter of eligibility for appointment as a district superintendent because he lacked one of the requirements, i.e., six years of certified service in the basic K–12 schools, including three years of satisfactory certified service in supervisory or administrative positions. *See* 22 Pa.Code § 49.172.

course of action to avoid appointment of a qualified superintendent and to elevate the Solicitor to that position. Although the Board did author an advertisement for a superintendent during June of 2007, that action in terms of seeking a properly qualified superintendent was a nullity. To begin, the advertisement itself was structured to meet the personal background of Attorney Semanchik.... Thus, the advertising for a superintendent at the earliest moments of the vacancy was illusory as it was written not to attract a properly educated and qualified educator, but rather the unqualified board solicitor. (Trial ct. op. at 15–17) (emphasis added). As for the Waiver Applications, the trial court stated:

> The application[s] for mandate waivers by the school board further demonstrate the **conflicted relationship** between the Board and their solicitor/acting assistant superintendent/acting superintendent. The first application ... was actually presented to the Department ... through the law office of Attorney Semanchik.... Each application affirmed that the school board's solicitor had reviewed the application and determined that the waiver did not violate any court order or state or federal law[,] **the same solicitor who was seeking the very waiver to become the school superintendent.** At the very least, an appearance of impropriety existed with regard to that process.

> The [School Board Members] have yet to comply with their mandatory duty under section 10–1071, leaving this Court with no alternative other than their removal.[12]

(Trial ct. op. at 18) (emphasis added). Therefore, on June 23, 2009, the trial court removed the Ex–Directors from their positions on the School Board. On June 25, 2009, the trial court amended the order by appointing four persons to replace four of the Ex–Directors. On July 22, 2009, the trial court denied a motion for reconsideration and a motion to amend the pleadings. The Ex–Directors now appeal to this court.

The Ex–Directors argue that the trial court abused its discretion in removing them under section 318 of the Code for neglecting to elect a qualified person as Superintendent under section 1071(a) of the Code. The Ex–Directors maintain that, given the lack of a timeframe for the election of a qualified person in section 1071(a) of the Code, the ability to appoint an unqualified person as acting superintendent under section 1079 of the Code, and the Mandate Waiver Program in section 1714–B of the Education Empowerment Act, the Code does not contain a clear mandatory duty to elect a qualified person as superintendent within a specific period of time. We disagree.

■ Section 1071(a) of the Code provides that a school board **shall** elect a **properly qualified** person as district superintendent. 24 P.S. § 10–1071(a). Certainly, by itself, section 1071(a) of the Code sets forth a mandatory duty to elect a qualified person as district superintendent.

Section 1079 of the Code provides that, when a school board finds it **impossible or impracticable** to **immediately** fill a vacancy for superintendent, the board may appoint an acting district superintendent to serve **not longer than one year** from the

---

**12.** The Ex–Directors, except for Misiewicz, argue that the trial court erred in believing that it had a mandatory duty, rather than discretion, to remove them. However, the trial court stated in a subsequent order that it was aware that it had discretion to remove the Ex–Directors. (Trial ct. order of 7/27/09 at 3 n.1.)

date of the appointment. 24 P.S. § 10–1079. Reading the section 1071(a) mandate *in pari materia* with section 1079 of the Code,[13] the school board must elect a qualified person **immediately** to fill a vacancy for superintendent **unless** the school board finds that it is impossible or impracticable to do so, in which case the school board may appoint an acting superintendent to serve **one year.**

Section 1714–B(a) of the Education Empowerment Act allows a school board to apply for a **mandate**[14] waiver for the superintendent eligibility requirements **if** the waiver will enable the school district to improve its instructional program or operate in a more effective, efficient or economical manner. 24 P.S. § 17–1714–B(a). Reading sections 1071(a) and 1079 of the Code *in pari materia* with section 1714–B of the Education Empowerment Act, a school board's mandatory duty under the Code is to **immediately** elect a qualified person **unless** the school board finds it impossible or impracticable to do so, in which case the school board may appoint an acting superintendent to serve one year, **or unless** the school board has obtained a mandate waiver with respect to the superintendent eligibility requirements, in which case the school board may elect the person for whom it has obtained the mandate waiver.

Here, the School Board never obtained a mandate waiver for Semanchik, so the School Board was not excused from performing its mandatory duty on that basis. Moreover, inasmuch as the School Board never attempted to contact any of the

qualified persons who applied for the position, the School Board had no basis for finding it impossible or impracticable to fill the vacant Superintendent position with a qualified person. Absent circumstances that excuse the performance of the duty, the School Board was required to immediately elect a qualified person as Superintendent but failed to do so. Thus, we conclude that the trial court did not abuse its discretion in removing the Ex–Directors under section 318 of the Code.

In reaching this conclusion, we reject the Ex–Directors' argument that the mandate waiver program allowed them to postpone their statutory duty until they obtained a mandate waiver for Semanchik when qualified persons had applied for the Superintendent position. Submitting an application for a mandate waiver is not the same as obtaining a mandate waiver. The mandate exists **until** a school board has **obtained** a waiver, and, as this case demonstrates, submitting an application does not guarantee obtaining a waiver. Moreover, suspending a mandate simply because a school board has submitted a waiver application leads to an absurd result.[15] Indeed, if we were to construe the mandate waiver program to permit the suspension of a mandate upon the filing of an application, a school board could avoid performing mandatory duties forever simply by filing serial applications that have no merit.

■ Furthermore, in construing the provisions of the Code, we presume that the General Assembly intended to favor

---

**13.** Parts of statutes are *in pari materia* when they relate to the same things, and such shall be construed together, if possible. Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932.

**14.** The use of the word "mandate" to describe the waiver program makes clear that a school board seeking a waiver has a mandate and,

but for a waiver, the school board must fulfill its mandate.

**15.** We presume that the General Assembly did not intend a result that is absurd. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1).

the public interest in having a qualified person as Superintendent as against any private interest that an unqualified person, like Semanchik, might have in being the Superintendent. *See* Section 1922(5) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(5). In fact, section 1714–B of the Education Empowerment Act allows school boards to apply for a waiver of superintendent qualifications only **if** the waiver will enable the school district to improve its instructional program or operate in a more effective, efficient or economical manner. 24 P.S. § 17–1714–B. Significantly, the trial court believed that the School Board did **not** seek a waiver to improve the School District's instructional program or to have a more effective, efficient or economical operation. Rather, the trial court believed that there was a conflicted relationship between the School Board and Semanchik, such that the School Board sought a waiver **only** to give the position of Superintendent to Semanchik.[16]

Accordingly, we affirm.

Judge BROBSON did not participate in the decision in this case.

**16.** The Ex–Directors argue that, under *In re Fahey,* 344 Pa. 267, 25 A.2d 158 (1942), the trial court was required to find that the Ex–Directors acted in bad faith or that they willfully neglected their statutory duty. However, it is clear that the trial court rejected the Ex–Directors' claim that they acted in good faith and that they honestly thought they were complying with the Code.

If a trial court rejects testimony based on the demeanor of the witness, an appellate court cannot review that credibility determination. *Koppel Steel Corporation v. Board of Assessment Appeals,* 849 A.2d 303 (Pa. Cmwlth.2004). Here, the trial court had the opportunity to view the demeanor of each of the Ex–Directors as they testified. Thus, as an appellate court, we cannot review the trial court's rejection of their testimony about their intentions.

To the extent that the Ex–Directors argue pursuant to *In re Kline Township School Di-*

*ORDER*

AND NOW, this 27th day of September, 2010, the orders of the Court of Common Pleas of Schuylkill County, dated June 23, 2009, and June 25, 2009, are hereby affirmed.

**DISSENTING OPINION by Judge LEAVITT.**

The majority authorizes the removal of eight of the nine elected directors of the North Schuylkill School District because they voted to request the Pennsylvania Department of Education to approve their choice for school superintendent using a procedure expressly authorized by statute. The only director spared from removal came onto the School Board after this vote was cast. Simply, the Public School Code of 1949[1] does not authorize the courts to take the drastic step of removing elected directors of a school board because the directors have exercised their discretion in an unpopular, or even incorrect, way.[2] Accordingly, I dissent, with respect, from the majority opinion.

*rectors,* 353 Pa. 91, 44 A.2d 377 (1945), that the trial court erred in removing them for malfeasance or misfeasance, we reject the argument. The trial court removed the Ex–Directors for non-feasance, i.e., not functioning as a school board with respect to its mandatory duty to elect a qualified person as Superintendent.

**1.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

**2.** One appellant, John Misiewicz, was not elected to the School Board until November, 2007, after the Board's course of action for appointing Mark Semanchik had already been set in motion. Misiewicz has appealed his removal separately, but his arguments are the same as the remainder of the school directors on the legal issues presented in this appeal.

The relevant facts are not in dispute. On April 19, 2007, the superintendent of North Schuylkill, Dr. Robert Franklin, resigned effective June 29, 2007, one year before the expiration of his contract. The Board immediately contacted the Department of Education, which advised the Board to advertise for a replacement or to appoint an interim superintendent. The Department also put before the Board the option of appointing a superintendent who did not meet the minimum statutory requirements by requesting the Department to waive those requirements.[3] Because it did not believe it could fill the position in 60 days, the Board appointed Dr. Gerald Nesvold to serve as interim superintendent at its May 2007, meeting.[4] Dr. Nesvold, who was retired, committed to serve long enough to help the Board find a new superintendent and to launch the 2007–2008 school year. Reproduced Record at 202a (R.R. ____); Notes of Testimony, June 11, 2009 at 197 (N.T. ____).

Dr. Nesvold and the Board quickly established the criteria for the replacement superintendent. Stability was a major concern. The Board's fear was that a candidate would use the position at North Schuylkill as a stepping stone to another superintendent position, as is often the case. Dr. Nesvold testified that in Pennsylvania superintendents serve, on average, only two years. Accordingly, the Board sought a superintendent who, unlike Dr. Franklin, understood the community and would commit to become involved in

it.[5] The Board also wanted a superintendent knowledgeable in labor relations and the complexities of school law. With these objectives in mind, Dr. Nesvold advertised for the position of North Schuylkill superintendent.

He received responses from eight individuals, some of whom were known personally by Dr. Nesvold. He did not find any applicant to be suitable. In his view, each applicant fell short because he or she lacked sufficient life experience; lacked knowledge in labor and school law; or had weak academic credentials. In short, Dr. Nesvold "didn't see anybody there that fulfilled some of the primary things ... that the board was looking for." R.R. 203a; N.T. 202–203. Dr. Nesvold did not recommend that any applicant be interviewed, and none were.

The Board approached its solicitor, Mark Semanchik, about assuming the superintendent position. He demurred at first but was eventually persuaded to consider the appointment. The Board believed Semanchik was the best candidate for the job for several reasons. His commitment to the District was obvious inasmuch as he himself was a product of North Schuylkill, as were his five children. Semanchik's knowledge and experience in labor relations and in school law had been well established during his 16 years of service as the District's solicitor, a period that had included a difficult teachers' strike. It was true that Semanchik did not

---

**3.** Section 1003 of the Public School Code of 1949 requires a superintendent to: (1) hold "a diploma from a college," (2) have "six (6) years' successful teaching experience, not less than three of which shall have been in a supervisory or administrative capacity;" and (3) have completed "a graduate program in education." 24 P.S. § 10–1003.

**4.** Dr. Nesvold had served as a principal in the North Schuylkill district for many years and

also had over ten years of experience as a superintendent at the Shenandoah Valley and Shamokin Area School Districts.

**5.** Dr. Franklin lived outside the school district and was never an active member of the community. Dr. Franklin did not attend school events or, in the words of Board member Robert Wetzel, "buy into the district, and we're a coal region." R.R. 188a; N.T. 143.

meet all of the statutory requirements for a permanent superintendent. He held "a diploma from a college;" indeed he had a law degree. 24 P.S. § 10–1003. However, he did not have teaching experience (including school administration experience) or a graduate degree in education. However, the Department of Education had informed the Board that these requirements could be waived. The Board decided to request a waiver for Semanchik. Dr. Nesvold explained that the Department "led us by the hand, encouraged us to apply for that mandate waiver, and we had every reason to believe that it was going to be approved." R.R. 204a; N.T. 207–208.

On July 11, 2007, the Board submitted an application to the Department of Education requesting a waiver for Semanchik from the requirements of teaching experience and a graduate degree in education. The Department denied the application on September 6, 2007, to the Board's surprise, given its prior discussions with the Department. The Board requested, and received, a meeting later that month with Dr. Gerald Zahorchak, Secretary of Education. Semanchik, Dr. Nesvold and several Board members attended the September meeting, which was promising. Board member Robert Wetzel testified that he left the meeting convinced that the Department would grant a waiver for Semanchik. In October, Dr. Nesvold resigned and Semanchik was appointed "acting assistant superintendent" for the remainder of the 2007–2008 school year.

A second mandate waiver application was filed later in the school year, and it was denied on April 24, 2008, in a brief one page letter, noting that Semanchik had not completed his graduate degree in education or acquired sufficient administrative experience. After research and discussions with the Department, Semanchik concluded that once he completed his degree, he would qualify for a waiver of the teaching experience requirement. This is because in 2006, the Department had granted East Allegheny School District a waiver for its business manager. Like Semanchik, the business manager had no teaching experience; had acquired administrative experience as an acting superintendent; and had earned a graduate degree in education.[6] The Department gave Semanchik the East Allegheny application to serve as a model waiver application.

Believing that the requisite waiver from the Department would be forthcoming, the Board appointed Semanchik to serve as acting superintendent for one year, effective July 1, 2008. On May 1, 2009, Semanchik completed his graduate degree in education and had acquired the requisite administrative experience by serving ten months as acting superintendent. Simultaneously, a third mandate waiver application was filed with the Department.[7]

In November, 2008, 18 months after the announcement of Semanchik's appointment, a group of citizens filed a petition to remove all elected directors from the Board and to remove Semanchik as acting

---

6. The Department's website posts all of the applications and decisions submitted under the mandate waiver program at *www.pde.state.pa.us*. Posted there is the 2006 mandate waiver application of East Allegheny School District and the decision of the Department granting approval.

7. There is no limit to the number of waivers that may be filed. *See* Section 1714–B of the Public School Code of 1949, 24 P.S. § 17–1714–B(e), added by the Act of May 10, 2000, P.L. 44, No. 16 § 8.1 (stating that if "the department disapproves the application for waiver … [t]he board of school directors may submit a revised application for a waiver.").

superintendent.[8] Petitioners asserted that the school directors had failed in their duty to appoint a fully qualified superintendent. The school directors filed preliminary objections but, for the most part, they were overruled. Answers were then filed, and on June 11, 2009, the trial court conducted a hearing. On June 23, 2009, while the third mandate waiver application was pending, the trial court removed eight elected school directors. On June 25, 2009, the trial court replaced the elected school directors with persons of the court's choosing.

The trial court held that the Board had not satisfied its statutory duty to appoint a qualified superintendent. The trial court also held that it had been improper for the Board to appoint Semanchik as acting superintendent for the 2008–2009 school year because the Board's minutes did not show that it was impossible or impracticable for the Board to appoint a qualified superintendent when, instead, it appointed Semanchik acting superintendent for one year.[9] The trial court suggested, but did not explicitly find, that Semanchik had a conflict in serving as the district's acting superintendent and its solicitor. In addition to removing the elected directors from their office, the trial court enjoined the directors

from running for that office for a period of five years.

On appeal, the removed school directors (School Directors) contend that the trial court erred in its interpretation and application of Section 318 of the Public School Code of 1949, 24 P.S. § 3–318. They contend that they did not refuse or neglect to perform a mandatory duty. From the time Dr. Franklin resigned to the moment the School Directors were removed from office, the North Schuylkill School District had a functioning superintendent in place. Further, the Board's appointment of Semanchik as acting superintendent for one year was expressly authorized by the Public School Code of 1949. However, even if the Board had erred in this regard, such an error did not authorize the removal of the School Directors. They contend that the drastic step of removal is reserved for the situation where a school director refuses to act, not where a director makes a mistake. The Pennsylvania School Boards Association, *amicus curiae*, agrees with the School Directors. It argues that the drastic measures authorized by Section 318 are limited to a situation where a school director, alone or in concert, acts in bad faith.[10]

8. Later in the proceeding, the petition was amended to limit the removal request to school directors who had voted to appoint Semanchik and to submit the mandate waiver application.

9. Section 1079 of the Public School Code of 1949 authorizes a board to appoint an acting district superintendent to serve not longer than one year, when it is found to be "impossible or impracticable to fill immediately any vacancy occurring in the position of district superintendent...." 24 P.S. § 10–1079.

10. The Pennsylvania School Boards Association emphasizes that the appointment of a superintendent is a highly discretionary decision and perhaps the most important one to be made by a school board. It notes that the

superintendent requirements in Section 1003 are the floor and, as such, provide no meaningful guidance on choosing an appropriate superintendent. With the waiver provision in the Public School Code of 1949, the school board's discretion has been greatly expanded. The Association explains that "[m]andate waivers and other innovations and evolutions in concepts of public school governance mean that what constitutes a mandatory duty for today's school directors truly can be a moving target." Amicus Curiae Brief at 10. Stated otherwise, school boards are on the horns of a dilemma: not to seek a waiver could be considered a dereliction of duty. Accordingly, the Association seeks a ruling to limit the removal remedy in Section 318 to instances where the school director acts in bad faith.

At the heart of this case is the scope and meaning of Section 318 of the Public School Code of 1949. It states as follows:

*If the board of school directors in any district (1) fail to organize as hereafter provided, or (2) refuse or neglect to perform any duty imposed upon it by the provisions of this act relating to school districts,* or (3) being a party to a joint board agreement refuse or neglect to perform any duty imposed upon it by the provisions of this act relating to joint boards or by the joint board agreement, *any ten resident taxpayers in the district* or, in the case of a distressed school district as defined in this act, the special board of control provided for in section 692 of this act, *may present their or its petition in writing,* verified by the oath or affirmation of at least three such resident taxpayers or, in the case of a distressed school district, by the Superintendent of Public Instruction to the court of common pleas of the county in which such district or the largest part in area is located, *setting forth the facts of such refusal or neglect of duty on the part of such school directors.* The court shall grant a rule upon the school directors, returnable in not less than ten or more than twenty days from the date of issue thereof, to show cause why they should not be removed from office. The school directors shall have at least five days' notice of the granting of the rule. On or before the return day of the rule the school directors, individually or jointly, shall file in writing their answer or answers to the petition, under oath. If the facts set forth in the petition, or any material part thereof, is denied, the court shall hear the several parties on such matters as are contained in the petition. If on such hearing, or if when no answer is filed denying the facts set forth in the petition, the court shall be of the opinion that any *duty imposed on the board of school directors, which is by the provisions of this act made mandatory upon them to perform, has not been done or has been neglected by them,* the court shall have power to remove the board, or such of its number as in its opinion is proper, and appoint for the unexpired terms other qualified persons in their stead, subject to the provisions of this act.

The court shall impose the cost of such proceedings upon the petitioners, or upon the school directors, or upon the school district, or may apportion the same among them as it shall deem just and proper.

Any person so removed from the office of school director shall not be eligible again as school director for the period of five (5) years thereafter.

24 P.S. § 3–318 (emphasis added). The removal of elected officials authorized by Section 318 is a breathtaking remedy worthy of study and reflection.

The origins of Section 318 lie deep in Pennsylvania's history of public education law, at a time when it could not be predicted how local communities would respond to the legislature's public education initiatives. In 1838, the General Assembly first created the removal remedy, which stated:

If any person who may be or has been elected a school director, shall refuse to attend a regular meeting of the proper board, after having received written notice to appear and enter upon the duties of his office; or if any person having taken on him the duties of his office as director, shall neglect to attend any two regular meetings of the board in succession, or to act in his official capacity when in attendance, the directors present shall have power to declare his seat in the board vacant, and to appoint another in his stead, to serve till the next

regular election; and if the whole board should decline or refuse to serve, then a new board shall be elected, in the manner described in the second section of the act to which this is a supplement, on notice put up for two weeks, at six public places in the proper district, by any ten qualified voters of the district ...

Section 11 of the Act of April 12, 1838, P.L. 332. The 1838 act went on to assign responsibility for supervising the election of replacements to the "court of Quarter Sessions of the proper county." *Id.* The removal remedy addressed the legislature's concern that elected directors would sabotage public education by not taking office or, if they did take office, not attending meetings. Subsequent education statutes enacted in 1854, 1863 and 1893 continued to address the "failure to organize" concern by providing a removal remedy. *In re: Georges Township School Directors,* 286 Pa. 129, 131, 133 A. 223, 224 (1926) (providing a history of the removal remedy in considering a constitutional challenge to the provisions). The removal remedy then made its way into Sections 217–219 of the Public School Code of 1911, Act of May 18, 1911, P.L. 309, as "practically the same regulation" as its 1838 predecessor. *Id.* at 132, 133 A. at 224. Section 318 of the Public School Code of 1949 almost exactly mirrors Sections 217–219 of the Public School Code of 1911.

The first court to consider the removal remedy under the Public School Code of 1911 explained that its

> framers ... evidently intended to *emphasize the proposition that the nonfeasance* for which a school board may be removed, in part or as a body, must relate to an act or duty made obligatory.

*In re: Carbondale School District,* 20 Pa. D. 658, *available at* 1911 WL 4013, at *2 (Lackawanna County, July 15, 1911) (emphasis added). Such duties include: organization, levying taxes, providing school buildings and hiring teachers.[11] *Id.* The Lackawanna County Court of Common Pleas refused to remove directors who had split their vote on a superintendent and, thus, were unable to agree on an appointment. A split vote did not constitute nonfeasance; to the contrary, the court found that the directors had "exercised proper deliberation, judgment and discretion." *Id.* at *3.

Our Supreme Court has adopted the view of the Lackawanna County Court of Common Pleas that the removal remedy is reserved for non-feasance, not malfeasance. Noting that removal was appropriate where, for example, a director refused to take the oath of office, elect officers, equip schools, appoint teachers or levy taxes, the Supreme Court explained:

> The entire tenor of Section 217 indicates that it *is for non-feasance and not for malfeasance* or misfeasance in office that a director may be removed. He is removable not for doing evil things in office but for *not functioning* as a director in respect to his mandatory duties. For his non-functioning and not for his criminal actions while in office is he removable by a Court of Common Pleas.

*In re: Kline Township School Directors,* 353 Pa. 91, 95, 44 A.2d 377, 379 (1945) (emphasis added) (holding that the commission of criminal acts by a school director did not authorize his removal but, rather, his prosecution).[12]

---

11. A school director could take the oath and attend meetings, but then refuse to levy taxes, build schools or hire teachers. Dereliction of these latter tasks could also sabotage public education.

12. *Kline Township* clarified the Supreme Court's earlier holding in *In re Fahey,* 344 Pa.

Here, the School Directors contend, correctly, that they did not "refuse or neglect to perform any duty." This is not a case of non-feasance. To the contrary, the Board selected a superintendent believed to be most qualified for the position, and no one has suggested that the Board was wrong in this judgment. At the time of the first application, Semanchik did not satisfy two of the three statutory requirements: teaching experience and a graduate degree in education. He quickly took steps with respect to the latter requirement, leaving only the requirement for teaching experience, which was a waivable requirement and had been waived in the past. The Board believed a waiver would be granted for Semanchik, which would make him "fully qualified." The Board's belief was not based upon speculation but upon discussions with the Secretary of Education and the Department's own precedent with respect to the East Allegheny School District.

Petitioners do not offer a cogent interpretation of the Public School Code of 1949. They contend that a board has the mandatory duty to appoint a qualified superintendent, which, they argue, must always be a person who has teaching experience. Stated another way, Petitioners argue that teaching experience is not a waivable requirement. In doing so, Petitioners refuse to acknowledge the waiver provisions in the Public School Code of 1949. Section 1714–B of the Public School Code of 1949 states that

> the board of school directors may adopt a resolution to apply for a waiver to any provision of this act, the regulations of the State Board of Education or the standards of the secretary if the *waiver will enable the school district to improve its instructional program or operate in a more effective, efficient or economical manner.*

24 P.S. § 17–1714–B(a) (emphasis added). Section 1714–B then provides that before a board actually implements a waiver, "approval by the department shall be required." 24 P.S. § 17–1714–B(c). The waiver covers every statute and regulation, including the requirements in Section 1003 that establish the mandatory qualifications for a superintendent.

The General Assembly has singled out only one statutory qualification for a superintendent that cannot be waived: completion of the Pennsylvania school leadership program or its equivalent. Section 1003(3) of the Public School Code of 1949, 24 P.S. § 10–1003(3).[13] By making the

---

267, 277, 25 A.2d 158, 162 (1942), that the school director's "breach of duty" could support his removal. Arguably, a "breach of duty" could be construed to include malfeasance. In *Fahey,* the school directors were charged with "failure to make deposits in the 'sinking fund'...." *Id.* at 276, 25 A.2d at 162. The Supreme Court overturned their removal for the reason that the record lacked "clear proof of breach of duty" before the "drastic procedure" of removal was undertaken. *Id.* at 277, 25 A.2d at 162. The Supreme Court also cautioned that even where a duty has been breached "a court is not *required* to remove a board of directors; it is simply *empowered* to do so." *Id.* at 276, 25 A.2d at 162 (emphasis in original). *Kline Township*

clarified that nonfeasance, not malfeasance, triggers the removal remedy.

13. It states, in relevant part, as follows:

> No person shall be eligible for election or appointment as a district, or assistant district superintendent, unless—
>
> (2) He has had six (6) years' successful teaching experience, not less than three of which shall have been in a supervisory or administrative capacity;
>
> (3) He has completed in a college or university a graduate program in education approved by the Department of Education that includes the Pennsylvania school leadership standards under section 1217. *Completion of the program shall not be subject to*

completion of the public leadership program non-waivable for superintendents, the legislature has actually clarified that all other mandates for a qualified superintendent, including classroom experience, can be waived.[14] The contrary argument of the citizens is at odds with Section 1714–B of the Public School Code of 1949.

None of the Board's actions could have been challenged in mandamus because its actions were expressly authorized by statute and involved the exercise of discretion. The Board's choice of superintendent was discretionary. As pointed out by the Pennsylvania School Boards Association, the choice of a school superintendent may be the most important decision of a school board, requiring careful deliberation. The Board could not have been required by

writ of mandamus to interview or appoint one of the eight applicants found unsuitable by Dr. Nesvold, even though these applicants satisfied the minimum statutory requirements. The Board could not have been enjoined from pursuing a waiver with the Department because a waiver has been expressly authorized by the Public School Code of 1949. Indeed, the statute expressly authorizes a board to resubmit a waiver application that has been disapproved, without limit. The Board could not have been prevented from appointing Semanchik acting superintendent for one year because acting superintendents, for whom there are no eligibility requirements, are expressly authorized by statute.[15] That the Board's actions could not be redressed in a writ of mandamus is the clearest proof that it did not "refuse or

---

*waiver under section 1714–B unless the candidate provides to the Secretary of Education evidence that the candidate has successfully completed an equivalent leadership development program that addresses the school leadership standards under section 1217.* 24 P.S. § 10–1003 (emphasis added). Semanchik satisfied the leadership development requirement; this was never a point in dispute.

14. Indeed, the Department's denials of the waiver for Semanchik are inexplicable and inconsistent with its own prior decisions. The Department must approve a waiver request unless it finds that the waiver will *not* "enable the school district to improve its instructional program or operate in a more effective, efficient or economical manner." Section 1714–B of the Public School Code of 1949, 24 P.S. § 17–1714–B(a). The Board's waiver applications addressed the standards in Section 1714–B, showing, *inter alia,* that Semanchik's appointment was save the District money. The Department never challenged the Board's waiver applications as inadequate on the Section 1714–B waiver standards.

15. The trial court found that the Board failed to prove that it was impossible or impracticable to appoint a permanent superintendent,

noting that the Board's minutes and resolution did not recite "impracticable and impossible." The Board minutes are irrelevant; Section 318 does not authorize the removal of elected school directors for keeping poor minutes. In any case, it is self-evident that appointment of another superintendent was impracticable and impossible. The Board expected that with Semanchik's graduate degree by May of 2009 and his additional experience in administration, the Department would grant the waiver. It would be impracticable and impossible, not to mention disruptive, to appoint another superintendent to serve a one-year term. Further, there are no statutory qualifications for an acting superintendent as there are for a permanent superintendent. Appointment of an acting superintendent satisfies the mandatory duty to appoint a superintendent or the legislature's authorization to use acting superintendents would have no meaning.

The suggestion that Semanchik had a conflict because he filled out the two-page waiver application is unfounded. Nothing in the Public School Code of 1949 supports that conclusion. Even so, a superintendent's conflict does not authorize a removal of school directors under Section 318. It may, however, trigger liability upon the superintendent.

neglect" a mandatory duty.[16]

Section 318 authorizes removal of a school director only for nonfeasance and not malfeasance. *Kline Township,* 353 Pa. at 95, 44 A.2d at 379. Here the School Directors did not refuse to act. To the contrary, they exercised "deliberation, judgment and discretion." *Carbondale School District,* 1911 WL 4013, at *3. Their removal was error. A Board's unpopular decisions can be addressed at the ballot box. I would reverse the order of the trial court, reinstate the School Directors whose terms have yet to expire, and dissolve the injunction prohibiting the School Directors from holding this office for five years.

---

16. "Neglect" does not connote negligence. As this Court has explained, a mistake in judgment or act of negligence does not consti-tute neglect of an official duty. *Appeal of Leis,* 72 Pa.Cmwlth. 104, 455 A.2d 1277, 1279 (1983).