IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clarence B. Turns, Jr., as                 :
Administrator of the Estate of             :
Mary E. Turns, Deceased,                   :
                        Appellant          :
                                           :
            v.                             :
                                           :
Dauphin County and Central                 :    No. 340 C.D. 2020
Dauphin School District                    :
                                           :
                                           :
Clarence B. Turns, Jr., as                 :
Administrator of the Estate of             :
Mary E. Turns, Deceased                    :
                                           :
            v.                             :
                                           :
Dauphin County and Central                 :
Dauphin School District,                   :    No. 341 C.D. 2020
                        Appellants         :    Submitted: December 30, 2021


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge[1]
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY JUDGE FIZZANO CANNON              FILED:  March 22, 2022


            Clarence B. Turns, Jr., as Administrator of the Estate of Mary E. Turns

(Designated Appellant), and Dauphin County and Central Dauphin School District

(Taxing Authorities) cross appeal from the December 4, 2019 order (Order) of the

Court of Common Pleas of Dauphin County (trial court) that granted, in part, and

_____
        [1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn
Jubelirer became President Judge.

denied, in part, Designated Appellant's "Petition for Recovery of Assets and Imposition of Constructive Trusts" (Petition). Upon review, we affirm.

The facts of this matter, while unique, are relatively straightforward and not in dispute. On September 10, 1973, Mary E. Turns (Decedent) and her husband Clarence Turns, Sr. purchased a 3.9-acre tract of land purportedly located in Middle Paxton Township, Dauphin County (Purported Property), for $450 at a judicial tax sale. *See* Trial Court Memorandum Opinion dated March 4, 2020 (Trial Court Opinion) at 1. Prior to the tax sale, the Dauphin County Office of Tax Assessment had published the location and size of the Purported Property on Dauphin County Tax Map 43-40,[2] which identified the Purported Property as a square, landlocked tract of land located near Mehaffie Lane south of Fishing Creek Valley Road in Middle Paxton Township. *See* Trial Court Opinion at 1-2. Also prior to the tax sale, the Office of Tax Assessment had assigned a fair market value to the Purported Property and assessed real estate taxes based on that value, taxes which the prior owner presumably failed to pay, resulting in the Purported Property being listed for the tax sale. *See id.* at 2. Upon purchasing the Purported Property at the tax sale, Decedent and her husband received a Tax Claim Bureau Deed,[3] which listed the prior owner as unknown and described the Purported Property simply by its tax parcel number without a metes and bounds description or any other legal description thereof. *See id.*

---

[2] Specifically, the Purported Property was Tax Parcel 43-40-006. *See* "Petition for Recovery of Assets and Imposition of Constructive Trusts" (Petition) at 5.

[3] As in all such tax sales, Decedent and her husband acquired no warranty of title for the Purported Property. *See* Trial Court Memorandum Opinion dated March 4, 2020 (Trial Court Opinion) at 2.

Between 1974 and 2014, Middle Paxton Township assessed, and Decedent and her husband[4] paid, real estate taxes on the Purported Property totaling $3,612.80. *See* Trial Court Opinion at 2. Upon Decedent's death, the Purported Property passed to Designated Appellant, individually,[5] who questioned the Purported Property's $11,000 tax assessment valuation. *See id.* The Office of Tax Assessment investigated the matter and discovered the Purported Property did not, in fact, exist. *See id.* Accordingly, on October 22, 2014, the Office of Tax Assessment sent Designated Appellant a letter explaining that the Purported Parcel did not exist and would be removed from the mapping and tax roll. *See id.*

Designated Appellant filed the Petition on June 12, 2018. *See* Trial Court Opinion at 2. Designated Appellant sought relief based on alleged unjust enrichment by Taxing Authorities for holding property tax monies received inequitably. *See* Trial Court Opinion at 2; Petition at 11-14. Designated Appellant further sought an accounting of the total tax funds paid by Decedent and her husband on the Purported Property and requested that the funds be held in a constructive trust for the benefit of Decedent's estate, together with pre-judgment interest, compounded over the 41 years during which Decedent paid real estate taxes. *See* Trial Court Opinion at 2; Petition at 14-17. Finally, the Petition alleged that, by assessing and collecting real estate taxes on a nonexistent property, Taxing

---

[4] Decedent's husband passed away in 1999. *See* Trial Court Opinion at 1.

[5] We note that, in addition to being the sole heir to Decedent's estate, Clarence Turns, Jr. is also the administrator of Decedent's estate and thus Designated Appellant herein, as indicated *supra*.

Authorities violated the Pennsylvania Constitution's Uniformity Clause.[6] *See* Trial Court Opinion at 2; Petition at 17-19.

Taxing Authorities filed preliminary objections to the Petition alleging that the claims of the Petition were barred by the doctrine of *caveat emptor*. *See* Trial Court Opinion at 2-3. The trial court overruled Taxing Authorities' preliminary objections determining that an exception to the doctrine of *caveat emptor* applied in this case because the Purported Property did not lie within Dauphin County, as required for the application of *caveat emptor*. *See* Trial Court Opinion at 2-3 (citing Section 1 of the Act of April 21, 1856, P.L. 477, *as amended*, 72 P.S. § 5931).

Thereafter, Taxing Authorities filed an answer to the Petition (Answer) asserting the affirmative defenses of, *inter alia*, laches, failure of Decedent to mitigate damages, and unclean hands. *See* Trial Court Opinion at 3. Taxing Authorities filed a separate motion to disqualify Designated Appellant from representing Decedent's estate (Motion to Disqualify), to which Designated Appellant filed preliminary objections, which also included preliminary objections to the Answer. *See id.* Additionally, on October 12, 2018, Designated Appellant filed a petition seeking payment of attorney's fees. *See id.* By order dated December 3, 2018, the trial court overruled Designated Appellant's preliminary objections to the Answer and the Motion to Disqualify. *See id.* By separate orders both dated December 17, 2018, the trial court denied the Motion to Disqualify and dismissed the estate's motion for attorney's fees with prejudice. *See id.*

---

[6] Article VIII, section 1 of the Pennsylvania Constitution, known as the Uniformity Clause, provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1.

4

Following the submission of briefs, proposed findings of fact, and conclusions of law, and after conducting oral argument, the trial court granted the Petition, in part, and denied the Petition, in part. *See* Trial Court Opinion at 3; *see also* Order. The Order provided, in relevant part:

> The [trial c]ourt concludes that the conveyance to [] Decedent of what was described as Tax Parcel No. 43-40-006 by Tax Claim Bureau dated January 10, 1974 and recorded on January 15, 1974 in Deed Book "M", Volume 60, page 0500 is VOID, *ab initio* by reason of the parties' mutual mistake.
>
> [Designated Appellant] is awarded the original purchase price of $450.00 and real estate taxes paid in the amount of $3,612.80.
>
> The [trial c]ourt rejects [Designated Appellant's] claim under the Uniformity Clause of the Pennsylvania Constitution [and] the Equal Protection and Due Process Clauses of the United States Constitution[, U.S. Const. amend. XIV]. Further, the [trial c]ourt declines the invitation to award compound interest on the purchase price and real estate taxes for Decedent['s] laches but does not find [Designated Appellant] guilty of unclean hands or a failure to mitigate damage[s].

Trial Court Opinion at 3; Order at 1. Designated Appellant sought reconsideration, which request the trial court denied on December 24, 2019. *See id.* Designated Appellant then timely appealed[7] on December 31, 2019, and Taxing Authorities cross appealed on January 10, 2020. *See* Trial Court Opinion at 3-4; *see also* "Petitioner's Notice of Appeal Pursuant to the Provisions of Rules 702, 902, 903,

---

[7] Designated Appellant originally appealed to the Superior Court of Pennsylvania, which transferred the matter to this Court by order filed February 18, 2020.

904 and 905 P[a].R.A.P." dated December 31, 2019;[8] Taxing Authorities' "Notice of Appeal Pursuant to Rule 903(b)" dated January 10, 2020.

On appeal,[9] Designated Appellant claims that the trial court committed an error of law and an abuse of discretion by ruling that the tax sale of the Purported Property was void *ab initio* by reason of mutual mistake. *See* Designated Appellant's Brief at 23-26. Designated Appellant further claims that Taxing Authorities were unjustly enriched by having collected purchase monies to which they had no right and taxation amounts not owed to them because the property on which those amounts were received did not exist. *See id.* at 16-23. Further, Designated Appellant claims the trial court committed an error of law by determining that laches prevented Decedent's estate from attaining equitable relief. *See id.* at 26-28. Finally, Designated Appellant alleges that the trial court erred and/or abused its discretion by failing to award attorney's fees in this matter. *See id.* at 28-30. In their cross appeal, Taxing Authorities claim that the trial court erred by granting Designated Appellant the purchase price and taxes paid on the Purported Property because the rule of *caveat emptor* applies in this case. *See* Taxing Authorities' Brief at 11-14.

---

[8] Designated Appellant sought reconsideration of the December 4, 2019 order (Order), which the trial court denied by order dated December 24, 2019. In addition to the Order, Designated Appellant also purported to appeal the December 24, 2019 order denying the reconsideration request. *See* Notice of Appeal dated December 31, 2019, at 1-2. An order denying a motion for reconsideration, however, is not an appealable order. *See Hetherington v. Rogers*, 6 A.3d 6, 8 n.3 (Pa. Cmwlth. 2010).

[9] This Court's standard of review in a tax claim matter "is limited to determining whether the trial court abused its discretion, rendered a decision lacking supporting evidence, or clearly erred as a matter of law." *Santarelli Real Est., Inc. v. Tax Claim Bureau of Lackawanna Cnty.*, 867 A.2d 717, 721 (Pa. Cmwlth. 2005).

Initially, "[i]t is well settled that land purchased at a tax sale comes with no guarantee of title" and that "[t]he rule of *caveat emptor*, *i.e.*[,] let the buyer beware, applies to property sold at real estate tax sales." *Plank v. Monroe Cnty. Tax Claim Bureau*, 735 A.2d 178, 183 (Pa. Cmwlth. 1999). As a result, purchasers are generally not entitled to a refund of losses incurred in tax sales based on faults in title, such losses having resulted from purchasers' own "failure to take reasonable steps to protect themselves prior to making their bid at the sale." *Id.* at 184. However, the General Assembly has expressly stated that the rule of *caveat emptor* does not apply to the public sale of land in cases "where the lands do not lie within the county[.]" 72 P.S. § 5931.[10]

Here, the sale and purchase of the Purported Property at the 1973 tax sale was predicated on the mistake that the Purported Property did, in fact, exist. However, it is undisputed that the Purported Property does not exist. As such, the Purported Property cannot therefore, by definition, lie within Dauphin County, and the rule of *caveat emptor* does not apply to the 1973 tax sale. As the trial court explained:

---

[10] Specifically, Section 1 of the Act of April 21, 1856, P.L. 477, *as amended*, provides:

> In all public sales of land hereafter made by the treasurer or commissioners of the several counties of this commonwealth, in pursuance of the laws of this commonwealth the rule of *caveat emptor* shall apply, except in cases of double assessment, or where the taxes on which the sale is made shall have been previously paid, *or where the lands do not lie within the county*; and neither said treasurer nor commissioners shall be required to refund the purchase money, costs or taxes paid upon any tract or tracts of land so sold as aforesaid.

72 P.S. § 5931 (emphasis provided).

7

> In this case, the land described by Dauphin County as Tax Parcel 43-40-006, and upon which [Taxing Authorities] had charged taxes against the prior (unknown) owner, were lands that "did not lie within the county," inasmuch as the lands were later determined to not lie anywhere. Thus [] to the extent that *caveat emptor* expressed in [72 P.S.] 5931 applied, the exception cited therein – that the property must lie within the county – negated its application.

Trial Court Opinion at 5. We find no error or abuse of discretion in this determination by the trial court.

Further, Pennsylvania courts have long held that "[a] contract is void if it relates to a subject matter contemplated by the parties as existing at the time the contract was made, but which in fact did not exist[.]" *McDonald v. Kimmell*, 70 Pa. Super. 282, 288 (1918). No argument is forwarded in this case that the Purported Property either actually exists currently or actually existed at the time of the 1973 tax sale. Therefore, the sale was void *ab initio*, and Taxing Authorities had no right to collect either the purchase price or taxes on the nonexistent property thereafter.

The tax sale was also void based on the related reason of mutual mistake of the parties. "A mutual mistake exists if, at the time a contract is executed, both parties thereto are mistaken as to the existing facts." *A.S. v. Off. for Disp. Resol. (Quakertown Cmty. Sch. Dist.)*, 88 A.3d 256, 266 (Pa. Cmwlth. 2014). As the Superior Court of Pennsylvania has explained:[11]

> The doctrine of mutual mistake of fact serves as a defense to the formation of a contract and occurs when the parties to the contract have an erroneous belief as to a basic assumption of the contract at the time of formation which

---

[11] Although not binding, Superior Court decisions are persuasive authority in this Court. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

8

will have a material effect on the agreed exchange as to either party. A mutual mistake occurs when the written instrument fails to set forth the true agreement of the parties. The language on the instrument should be interpreted in the light of subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Murray v. Willistown Twp.*, 169 A.3d 84, 90 (Pa. Super. 2017) (quoting *Voracek v. Crown Castle USA Inc.*, 907 A.2d 1105, 1107-08 (Pa. Super. 2006), *appeal denied*, 919 A.2d 958 (Pa. 2007)). "Mutual mistake regarding an essential term of a contract may provide a basis for the contract's rescission if (1) the mistake relates to an essential fact which formed the inducement to the contract, and (2) the parties can be placed in their former position with reference to the subject matter of the contract." *Id.* (internal quotation marks and brackets omitted); *see also Blygh v. Samson*, 20 A. 996, 997 (Pa. 1891) ("A contract entered into in a mutual mistake as to an essential fact which formed the inducement to it, may be rescinded on discovery of the mistake, if the parties are placed in their former position with reference to the subject[] matter of it[.]"). Ordinarily, in land transfers, proof of mutual mistake in the deed of a transferred property permits the equitable reformation of the deed. *See Baltimore v. Freed* (Pa. Cmwlth., No. 330 C.D. 2014, filed Nov. 5, 2014),[12] slip op. at 10 (citing *Regions Mortgage Inc. v. Muthler*, 889 A.2d 39 (Pa. 2005)).

There can be no more fundamental mistake in a land transfer than the actual nonexistence of the land purportedly transferred. While we appreciate that

---

[12] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

land purchased at a tax sale comes with no guarantee of title, and that the purchaser may thereafter need to bring an action to quiet title to the property in question, we observe that, at a minimum, in the absence of fraud,[13] a land sale implies that the property in question exists to be sold. Therefore, we find that where the parties to a property sale are mutually mistaken as to the actual existence of the property purported to be sold, as here, then the contract is invalid and, therefore, void *ab initio*.[14] Accordingly, in addition to being void *ab initio* due to the Purported Property's nonexistence, the tax sale is also void based on the mutual mistake of the parties.

Additionally, the 1973 tax sale was predicated on the failure of the unknown previous owner to pay taxes thereon. Because the Purported Property did not exist, Taxing Authorities had no right to collect taxes thereon, and the resulting 1973 tax sale was therefore void *ab initio* for this third reason. *See* Section 9 of the Act of May 29, 1931, P.L. 280, 72 P.S. § 5971i ("No sale shall be valid where the taxes and interest . . . are not legally due and collectible.").

We do not agree with Taxing Authorities' assertion that the Purported Property's existence on paper somehow means that this nonexistent property should be viewed as a legal property capable of transfer. *See* Taxing Authorities' Brief at 13-14. The assignment to the Purported Property of a tax parcel identification number and the appearance of the Purported Property on tax maps did not magically transmute the Purported Property into physical existence or somehow confer legal

---

[13] No party alleges fraud in the 1973 tax sale at which Decedent and her husband acquired the Purported Property.

[14] We note that deed reformation is not an option in situations where the property purportedly sold does not exist, due to the impossibility of conforming the purported property's deed to the expectations of the parties.

status upon the nonexistent Purported Property. If anything, these errors compound the fundamental mistake regarding the existence of the Purported Property.

Designated Appellant's argument that Taxing Authorities were unjustly enriched by accepting and retaining the Purported Property's purchase price or the taxes erroneously collected is also unconvincing. *See* Designated Appellant's Brief at 16-23. As this Court has explained:

> Unjust enrichment is shown by benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of this doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Filippi v. City of Erie*, 968 A.2d 239, 242 (Pa. Cmwlth. 2009) (internal citation and quotation marks omitted).

Here, the collection of the purchase price and the taxes was a mutual mistake, as discussed *supra*. The return of these amounts placed the parties back in their former position with reference to the Purported Property. In denying Designated Appellant's unjust enrichment claim, the trial court noted that it found the tax sale void *ab initio* and fashioned a remedy that directed Taxing Authorities to return the purchase price of the Purported Property and all taxes collected thereon, which was the remedy sought by Designated Appellant in its unjust enrichment claim before the trial court. *See* Trial Court Opinion at 7-8. We discern no error in this determination. *See Est. of Marra v. Tax Claim Bureau of Lackawanna Cnty.*, 95 A.3d 951 (Pa. Cmwlth. 2014) (affirming trial court order requiring the

reimbursement of purchase price and all subsequent taxes paid on property where tax sale ruled void *ab initio* as a result of defective notice under the Real Estate Tax Law, Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803 (RETSL)).

Additionally, we find unpersuasive Designated Appellant's argument that Decedent's estate is entitled to 15% compound interest on the Purported Property purchase price and taxes paid over the past 41 years.[15] *See* Designated Appellant's Brief at 20-23. In addition to being barred from such recovery by laches, as discussed *supra*, the trial court determined that no legal grounds exist to apply a compounded 15% rate of interest – or any other rate of interest, for that matter – to a sovereign that mistakenly collects taxes not due. *See* Trial Court Opinion at 7. We find no error in the trial court's conclusion and note that the legal authorities cited by Designated Appellant – cases from the 1800s involving the administration of trusts,[16] a case involving the interest/payment amount of an acknowledged debt,[17] and sections of the RETSL concerning rights of redemption not at issue in this matter[18] – are inapposite and not supportive of the claimed entitlement to 15%

---

[15] Designated Appellant claims entitlement to the staggering windfall of $476,922.64 on the Purported Property's $450 purchase price and the approximately $3,600 of taxes paid over the decades based on computations made factoring in a compounded 15% interest. *See* Trial Court Opinion at 7; Designated Appellant's Brief at 21-23.

[16] *In re Harland's Accts.*, 5 Rawle 323, 1835 WL 2752 (Pa. 1835); *Appeal of Roberts*, 92 Pa. 407, 407 (1880). *See* Designated Appellant's Brief at 22.

[17] *In re Est. of Braun*, 650 A.2d 73, 75 (Pa. Super. 1994). *See* Designated Appellant's Brief at 22-23.

[18] Sections 9 and 15 of the Act of May 29, 1931, P.L. 280, *as amended*, 72 P.S. §§ 5971o and 5971i, respectively. *See* Designated Appellant's Brief at 23.

compounded interest.  We find no error in the trial court's refusal to award the claimed interest on the Purported Property's purchase price and taxes paid.

Further, to the extent Designated Appellant argues that the trial court erred by finding the equitable defense of laches applicable to the present matter, we disagree.  *See* Designated Appellant's Brief at 26-28.  As this Court has explained:

> The doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim that those who sleep on their rights must awaken to the consequence that they have disappeared.  A claim is barred by laches where the party failed to exercise due diligence, which resulted in prejudice to the opposing party.  The test for due diligence is not what a party knows, but what he might have known by the use of information within his reach.  Prejudice may be found where there has been some change in the condition or relations of the parties which occurs during the period the complainant failed to act.

*Slack v. Slack*, 256 A.3d 472, 482 (Pa. Cmwlth. 2021), *reargument denied* (May 26, 2021 (internal citations, quotation marks, and brackets omitted).  The trial court explained the application of laches to this matter as follows:

> The facts and circumstances of this case revealed that the property purchased at the tax sale by [Decedent] and [her husband] in 1973 listed the prior owner as unknown and lacked a property description other than a tax parcel number.  The Turns, and later [Decedent] alone, made no effort in over 41 years to quiet title to a property with such obvious deficiencies and clearly establish their right and accurate title to the parcel.  This lack of due diligence in confirming their title was further revealed when the Turns twice tried to sell the property during their lifetimes but no buyer was interested because there was no legal description.  This lack of due diligence prejudiced [Taxing

13

> Authorities'] ability to remedy the problem and return the purchase price and taxes paid without incurring decades worth of interest payments.

Trial Court Opinion at 7 (internal record citation omitted). We find no error or abuse of discretion in this determination.

Finally, we find no merit in Designated Appellant's argument that the trial court erred by not awarding costs and attorney's fees.[19] *See* Designated Appellant's Brief at 28-30. Designated Appellant claims that he is entitled to receive attorney's fees under 42 Pa.C.S. § 2503[20] because Taxing Authorities engaged in

---

[19] The trial court questioned whether Designated Appellant had properly and timely appealed the denial of the request for attorney's fees, costs, and expenses noting that Designated Appellant requested attorney's fees not in the Petition, but in a separate filing denied by a separate order. *See* Trial Court Opinion at 6 n.1. The trial court notes that both parties appealed from the order denying the Petition, which does not address Designated Appellant's request for attorney's fees, and not the separate order denying Designated Appellant's separate request for attorney's fees. *See id.* While we appreciate the trial court's observation, we note that "an appeal of a final order subsumes challenges to previous interlocutory decisions[.]" *Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 54 (Pa. 2012); *see also Sunoco Partners Mktg. & Terminals, L.P. v. Clean Air Council*, 219 A.3d 280, 295 (Pa. Cmwlth. 2019) (quoting *Betz*); *Franciscus v. Sevdik*, 135 A.3d 1092, 1093 n.1 (Pa. Super. 2016) ("[O]nce a final, appealable order has been appealed, any prior interlocutory order can be called into question."). Accordingly, we will review the claim. Further, we note that, even if the trial court was correct and Designated Appellant's attorney's fee claim was waived, our resolution of the claim herein would render any mistake in reviewing the claim harmless.

[20] Specifically, Designated Appellant claims entitlement to attorney's fees, costs and expenses under subsections 6, 7 & 9 of Section 2503, which provide, in pertinent part:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> . . . .
>
> (6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.

14

dilatory, obdurate, and vexatious conduct by raising affirmative defenses in the underlying matter that were irrelevant and/or not supported by a sound basis in law and fact. *See* Designated Appellant's Brief at 28-30. The trial court denied Designated Appellant's request for fees, costs, and attorney's fees, determining: (1) that no evidence existed that Taxing Authorities had engaged in dilatory, obdurate, vexatious, or arbitrary conduct; (2) that Taxing Authorities raised no irrelevant defenses; and (3) that, instead and in fact, "[a]ll issues raised by [Taxing Authorities] were of arguable merit and within the bounds of litigation." Trial Court Opinion at 6. Our review of the record confirms the trial court's assessment of Taxing Authorities' conduct and defenses/claims raised throughout this litigation. Taxing Authorities would have risked waiving the affirmative defense of laches (which the trial court determined had merit) and the application of certain statutory immunities had they not raised the same. These defenses were of arguable merit and raising them in no way amounted to dilatory, obdurate, vexatious, or arbitrary conduct entitling Decedent's estate to an award of attorney's fees, costs, or expenses. Accordingly, Designated Appellant's claim fails.[21]

---

> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.
>
> . . . .
>
> (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa.C.S. § 2503(6), (7) & (9).

[21] To the extent Designated Appellant attempts to relitigate his claim for attorney's fees in an application for relief filed with this Court on December 27, 2021, and entitled "Application for Relief Pursuant to Pa.R.A.P. 123 of Designated Appellant Clarence B. Turns, Jr., as Administrator

15

For the reasons stated herein, we affirm the trial court's December 4, 2019 order and deny Designated Appellant's "Application for Relief Pursuant to Pa.R.A.P. 123 of Designated Appellant Clarence B. Turns, Jr., as Administrator of the Estate of Mary E. Turns, Deceased[,] in the Nature of a Motion for Attorney's Fees, Costs and Expenses Pursuant to Pa.R.A.P. 2744," filed on December 27, 2021.


_____
CHRISTINE FIZZANO CANNON, Judge

---

of the Estate of Mary E. Turns, Deceased[,] in the Nature of a Motion for Attorney's Fees, Costs and Expenses Pursuant to Pa.R.A.P. 2744", we deny the application for the reasons stated above.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clarence B. Turns, Jr., as :
Administrator of the Estate of :
Mary E. Turns, Deceased, :
     Appellant :
       :
    v. :
       :
Dauphin County and Central :  No. 340 C.D. 2020
Dauphin School District :
       :
       :
Clarence B. Turns, Jr., as :
Administrator of the Estate of :
Mary E. Turns, Deceased :
       :
    v. :
       :
Dauphin County and Central :
Dauphin School District, :  No. 341 C.D. 2020
     Appellants :

## O R D E R

AND NOW, this 22nd day of March, 2022, the December 4, 2019 order of the Court of Common Pleas of Dauphin County is AFFIRMED.

The "Application for Relief Pursuant to Pa.R.A.P. 123 of Designated Appellant Clarence B. Turns, Jr., As Administrator of the Estate of Mary E. Turns, Deceased[,] In the Nature of a Motion for Attorney's Fees, Costs and Expenses Pursuant to Pa.R.A.P. 2744" filed on December 27, 2021, is DENIED.

         _____
         CHRISTINE FIZZANO CANNON, Judge