# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Troy Prozan | : | CONSOLIDATED CASES |
| | : | |
| v. | : | |
| | : | |
| Millcreek Township School | : | |
| District Board of Directors | : | |
| | : | |
| Erin Beckes, Dan Reese, | : | |
| Dana Richter, Theresa Richter, | : | |
| Cliff Smathers, Grace Smathers, | : | |
| Kirra Tupper, Carolyn Brown, | : | |
| Glenn Craig, Eve Frank, | : | |
| Sharon Jones, and Ted Jones | : | |
| | : | |
| v. | : | |
| | : | |
| North East School District | : | |
| Board of Directors | : | |
| | : | |
| Appeal of: Troy Prozan and Erin | : | No. 1094 C.D. 2022 |
| Beckes | : | |
| | : | |
| Troy Prozan | : | |
| | : | |
| v. | : | |
| | : | |
| Millcreek Township School District | : | |
| Board of Directors | : | |
| | : | |
| Erin Beckes, Dan Reese, | : | |
| Dana Richter, Theresa Richter, | : | |
| Cliff Smathers, Grace Smathers, | : | |
| Kirra Tupper, Carolyn Brown, | : | |
| Glenn Craig, Eve Frank, | : | |
| Sharon Jones, and Ted Jones | : | |
| | : | |
| v. | : | |
| | : | |
| North East School District Board | : | |
| of Directors | : | |

Appeal of: Millcreek Township School     :
District Board of Directors and North     :    No. 1115 C.D. 2022
East School District Board of Directors    :


Erin Beckes, Carolyn Brown, Daniel        :
Reese, Sharon Jones, Eve Frank,           :
Kirra Tupper, Glenn Craig, Theresa        :
Richter, Dana Richter, Ted Jones,         :
Grace Smathers and Clifford               :
Smathers                                  :
                                          :
              v.                          :
                                          :
North East School District Board          :
of Directors,                             :    No. 1225 C.D. 2022
                        Appellant         :


Erin Beckes, Carolyn Brown, Dan           :
Reese, Sharon Jones, Eve Frank,           :
Kirra Tupper, Glenn Craig, Theresa        :
Richter, Dana Richter, Ted Jones,         :
Grace Smathers and Clifford               :
Smathers                                  :
                                          :
              v.                          :
                                          :
North East School District Board          :
of Directors                              :
                                          :    No. 1295 C.D. 2022
Appeal of: Erin Beckes                    :    Submitted: April 8, 2025


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE FIZZANO CANNON                              FILED: May 9, 2025

        In these consolidated appeals, groups of constituents (Appellants) from

two school districts in Erie County (School Districts) assert error by the Court of

Common Pleas of Erie County (Trial Court) in dismissing their petitions (Petitions)

for removal of the school boards of their respective districts (School Boards). Appellants insist the School Boards of Millcreek School District (Millcreek) and North East School District (North East) should be removed from office because they instituted legally unauthorized mask mandates for students, staff, and others present on school property during the COVID-19 pandemic.[1] The School Boards cross-appeal, alleging error by the Trial Court in its exercise of discretion to refuse their requests for awards of litigation costs against Appellants. Upon review, we affirm the Trial Court's decision in all respects.

## I. Background

These cases arose against the backdrop of the COVID-19 pandemic, beginning with a Proclamation of Disaster Emergency (Disaster Proclamation) by then-Governor Tom Wolf (Governor Wolf) on March 6, 2020.[2] *See Corman v. Acting Sec'y of the Pa. Dep't of Health*, 266 A.3d 452, 456 (Pa. 2021). The Disaster Proclamation was issued under the authority of Section 7301(c) of the Emergency Management Services Code,[3] 35 Pa.C.S. § 7301(c). Pursuant to the Disaster

---

[1] A claim related to this matter was before this Court in a previous appeal filed by Troy Prozan (Prozan), the named plaintiff in the Millcreek action. That appeal related to a separate lawsuit filed by Prozan against Millcreek alleging a violation of the Sunshine Act, 65 Pa.C.S. §§ 710-716, arising from the School Board's failure to take its official action to authorize its cross-appeal in this action in a public meeting. *Prozan v. Millcreek Twp. Sch. Dist.* (Pa. Cmwlth., No. 645 C.D. 2023, filed July 16, 2024), slip op. at 2-3. Concluding that Millcreek was not the proper party and that the school directors should have been the named defendants, the trial court dismissed the claim with prejudice. *Id.* at 5. On appeal, this Court vacated the trial court's order and remanded to the trial court with a directive to dismiss the claim without prejudice. *Id.* at 15-16.

[2] The Disaster Proclamation is available online at https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf (last visited May 8, 2025).

[3] 35 Pa.C.S. §§ 7101-79C13.

Proclamation, Governor Wolf, and by his authorization, Pennsylvania's then-Secretary of Health, Rachel L. Levine (Secretary Levine), issued a series of directives aimed at restricting person-to-person contact throughout Pennsylvania in an effort to combat the spread of the COVID-19 virus. *Corman*, 266 A.3d at 456. Secretary Levine's directives included a universal mask mandate, which was subsequently lifted on June 28, 2021, although masking was still urged. *Id.* at 457 (citing Press Release, "Department of Health Lifting Universal Masking Order on June 28, Urging Pennsylvanians to Follow Mask-Wearing Guidance Where Required," 6/25/2021 (hereinafter, DOH Press Release)).[4]

On August 23, 2021, the Erie County Department of Health (Erie DOH) issued an order that masks be worn in all public and private schools.[5] Three days later, on August 26, 2021, the Erie DOH rescinded a religious exemption that was originally part of the mask mandate.[6] Erie County's mask mandate for schools was rescinded effective January 6, 2022.[7]

Appellants demand removal of the elected members of both School Boards because the School Boards continued to require masking after health department public mandates had ended. Appellants maintain that the School Boards refused or neglected to perform mandatory duties imposed on them by the Public

---

[4] Available at https://www.media.pa.gov/pages/health-details.aspx?newsid=1505 (last visited May 8, 2025).

[5] Erie County Department of Health, press release, August 26, 2021, available online at https://eriecountypa.gov/erie-county-department-of-health-rescinds-religious-exemption-from-masking-order/ (Erie DOH Press Release) (last visited May 8, 2025).

[6] Erie DOH Press Release.

[7] *Erie County's School Mask Order Rescinded Starting Wednesday*, ERIE NEWS NOW, Jan. 5, 2022, available at https://www.erienewsnow.com/story/45581199/erie-countys-school-mask-order-rescinded-starting-wednesday (last visited May 8, 2025).

School Code of 1949[8] (School Code), within the meaning of Section 318 of the School Code, 24 P.S. § 3-318, because the mask mandates exceeded the authority conferred on school districts by Section 407 of the School Code to adopt "reasonable rules and regulations for [their] government and control . . . ." 24 P.S. § 4-407.

Appellants also protest that the School Districts' mask mandates did not include provisions for religious exemptions. Appellants base their argument for such an exemption on their suggestion that masks constitute forced medical treatment that parents of students are entitled to refuse on their children's behalf. *See Prozan v. Millcreek Twp. Sch. Dist. Bd. of Dirs.* (Erie, C.P., Nos. 10937-2022 & 90026-2022, filed Sept. 13, 2022) (Trial Ct. Op.) at 2.

The School Boards filed motions to quash the Petitions, arguing that the Petitions did not state cognizable claims for relief. After consolidation, briefing, and argument, the Trial Court agreed and, on September 13, 2022, issued an opinion and order granting the School Boards' motions and dismissing the Petitions. *See generally* Trial Ct. Op. The Trial Court cited the broad discretion conferred on school directors by Section 510 of the School Code to adopt such rules and regulations as they may "deem necessary and proper" in order to perform the functions and duties delegated to them in the School Code. Trial Ct. Op. at 6 (quoting 24 P.S. § 5-510). The Trial Court also observed that cause for removal of school directors under Section 318 is limited to instances of nonfeasance in failing or refusing to perform mandatory duties, not to instances of alleged malfeasance. Trial Ct. Op. at 4-5. The Trial Court explained that the School Boards "were tasked with a duty to act in the face of a pandemic and make decisions they believed were in the best interest of the students, given the present state of the medical knowledge

---

[8] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702.

4

they had at the time." *Id.* at 8. The Trial Court found that "[t]hroughout the pandemic and even today, masking and quarantining, along with vaccinations, are the most commonly utilized means of preventing the spread of COVID-19." *Id.* The Trial Court added that "students who chose not to comply with mask mandates on school district properties for religious reasons[] or otherwise, and those who were quarantined due to close contact were provided with the ability to attend school online or virtually. Thus[,] in today's day and age, access to education does not require a brick and mortar building." *Id.* Illustrating the difficulties faced by school districts in regard to masking policies, the Trial Court observed that school districts faced litigation arguing both for and against masking mandates, thus demonstrating the need for their exercise of discretion in making decisions about masking. *Id.* at 9 (first citing *Oberheim v. Bason*, 565 F. Supp. 3d 607 (M.D. Pa. 2021) (claim opposing a school district's mandatory masking policy); and then citing *B.P. by & through L.P. v. N. Allegheny Sch. Dist.*, 579 F. Supp. 3d 713 (W.D. Pa. 2022) (claim opposing a school board's decision to remove its mask mandate)).

The School Boards also challenged the Petitions procedurally, contending that they were not properly verified. As discussed further below, the Trial Court agreed as to Millcreek but found the initial defect had been cured as to North East by the filing of a proper verification. Trial Ct. Op. at 10.

In addition, the School Boards requested awards of litigation costs against Appellants. The Trial Court denied those requests. *Id.*

These consolidated appeals and cross-appeals followed.

5

## II. Issues

On appeal,[9] Appellants raise three arguments, which we reorder for clarity and convenience and paraphrase as follows. Appellants assert that the School Boards imposed mask mandates without legal authority and, therefore, the Trial Court erred in denying removal. Appellants further contend that masks constitute medical treatment and, therefore, even if the mask mandates were otherwise legally authorized, they were improper because they did not reflect any consideration of religious exemptions allowing for refusal of such medical treatment. Finally, Appellants maintain that the Trial Court erred in its alternative reason for dismissing the Petitions based on their failure to comply with procedural verification requirements.

In their cross-appeals, the School Boards argue that the Trial Court erred by refusing to award them litigation costs. They claim entitlement to costs under Section 318 of the School Code, 24 P.S. § 3-318.

---

[9] In reviewing trial court decisions regarding removal of school directors, an appellate court is "not authorized to weigh the evidence nor in other respects substitute [its] discretion for that of the court below, although, upon facts definitely ascertained, [an appellate court] will correct conclusions of law erroneously made." *McIntyre's Case*, 177 A. 833, 834 (Pa. 1935) (internal quotation marks and additional citation omitted). Where a trial court has properly found the facts warranting its decree, an appellate court will not reverse it "unless there was a manifest error in its finding or a flagrant abuse of its discretion." *In re Slippery Rock Twp. Sch. Dist.*, 71 A. 1085, 1085 (Pa. 1905). Similarly, a trial court's decision concerning an award of costs will not be reversed unless the trial court committed an error of law or "palpably abused its discretion." *In re Farnese*, 17 A.3d 357, 359 (Pa. 2011). An abuse of discretion is not merely an error of judgment; it occurs only "if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record . . . ." *Id.* at 559-60 (quoting *Oeler v. Oeler*, 594 A.2d 649, 651 (Pa. 1991) (additional quotation marks omitted)).

6

## III. Discussion

### A. Removal Based on Imposing the Mask Mandates

Section 318 of the School Code provides, in pertinent part:

> **§ 3-318. Removal for failure to organize or neglect of duty**
>
> If the board of school directors in any district (1) *fail to organize* as hereafter provided, or (2) *refuse or neglect to perform any duty imposed upon it by the provisions of this act* relating to school districts, . . . any ten resident taxpayers in the district . . . may present their . . . petition in writing, verified by the oath or affirmation of at least three such resident taxpayers . . . , to the court of common pleas of the county in which such district or the largest part in area is located, setting forth the facts of such refusal or neglect of duty on the part of such school directors. . . . If the facts set forth in the petition, or any material part thereof, is denied, the court shall hear the several parties on such matters as are contained in the petition. If on such hearing, or if when no answer is filed denying the facts set forth in the petition, the court shall be of the opinion that *any duty imposed on the board of school directors, which is by the provisions of this act made mandatory upon them to perform, has not been done or has been neglected* by them, *the court shall have power to remove the board*, or such of its number as in its opinion is proper, and appoint for the unexpired terms other qualified persons in their stead, subject to the provisions of this act.
>
> The court shall impose the cost of such proceedings upon the petitioners, or upon the school directors, or upon the school district, or may apportion the same among them as it shall deem just and proper.

24 P.S. § 3-318 (emphasis added).

Judicial removal of elected school board members "is a breathtaking remedy worthy of study and reflection." *Hetherington v. Rogers*, 6 A.3d 6, 18 (Pa. Cmwlth. 2010) (Leavitt, J., dissenting), *aff'd without op. by an equally divided court*,

48 A.3d 1218 (Pa. 2012). The historical background of the present removal provision in Section 318 is important to an understanding of its limited purpose and application. President Judge Emerita Mary Hannah Leavitt of this Court traced that history in detail in her dissenting opinion in *Hetherington* as follows:

> The origins of Section 318 lie deep in Pennsylvania's history of public education law, at a time when it could not be predicted how local communities would respond to the legislature's public education initiatives. In 1838, the General Assembly first created the removal remedy, which stated:
>
> > If any person who may be or has been elected a school director, shall *refuse to attend a regular meeting* of the proper board, after having received written notice to appear and enter upon the duties of his office; or if any person having taken on him the duties of his office as director, shall *neglect to attend any two regular meetings* of the board in succession, *or to act in his official capacity when in attendance*, the directors present shall have power to declare his seat in the board vacant, and to appoint another in his stead, to serve till the next regular election; and *if the whole board should decline or refuse to serve, then a new board shall be elected*, in the manner described in the second section of the act to which this is a supplement, on notice put up for two weeks, at six public places in the proper district, by any ten qualified voters of the district. . . .
>
> Section 11 of the Act of April 12, 1838, P.L. 332. The 1838 act went on to assign responsibility for supervising the election of replacements to the "court of Quarter Sessions of the proper county." *Id.* The removal remedy addressed the legislature's concern that elected directors would sabotage public education *by not taking office or, if they did take office, not attending meetings. Subsequent education statutes enacted in 1854, 1863 and 1893 continued to address the "failure to organize" concern by providing a removal remedy. In re: Georges* [*Twp.*] *Sch*[.]

8

*Dir*[*s.*], . . . 133 A. 223, 224 ([Pa. ]1926) (providing a history of the removal remedy in considering a constitutional challenge to the provisions).

*The removal remedy then made its way into Sections 217-219 of the Public School Code of 1911, Act of May 18, 1911, P.L. 309, as "practically the same regulation"* as its 1838 predecessor. *Id. . . .* , 133 A. at 224. *Section 318 of the Public School Code of 1949 almost exactly mirrors Sections 217-219 of the Public School Code of 1911.*

The first court to consider the removal remedy under the Public School Code of 1911 explained that its

> Framers . . . evidently intended to emphasize the proposition that the *non*[]*feasance* for which a school board may be removed, in part or as a body, must relate to an act or duty made obligatory.

*In re: Carbondale Sch*[.] *Dist*[.], 20 Pa. D. 658, available at 1911 WL 4013, at *2 (Lackawanna County, July 15, 1911) (emphasis [on "non[]feasance"] added). Such duties include: organization, levying taxes, providing school buildings and hiring teachers. *Id.* The Lackawanna County Court of Common Pleas refused to remove directors who had split their vote on a superintendent and, thus, were unable to agree on an appointment. *A split vote did not constitute non*[]*feasance; to the contrary, the court found that the directors had "exercised proper deliberation, judgment and discretion." Id.* at *3.

*Our Supreme Court has adopted the view of the Lackawanna County Court of Common Pleas that the removal remedy is reserved for non*[]*feasance, not malfeasance.* Noting that removal was appropriate *where, for example, a director refused to take the oath of office, elect officers, equip schools, appoint teachers or levy taxes*, the Supreme Court explained:

> The entire tenor of Section 217 [of the 1911 Act] indicates that *it is for non*[]*feasance and not for malfeasance or misfeasance in office that a director may be removed.* He is removable *not for doing evil things in office but for not functioning* as a director

9

> in respect to his mandatory duties. For his non-functioning and not for his criminal actions while in office is he removable by a Court of Common Pleas.
>
> *In re: Kline* [*Twp.*] *Sch*[.] *Dir*[*s.*], . . . 44 A.2d 377, 379 (Pa. 1945) (emphasis [on "non[]feasance and not malfeasance" and "not functioning"] added) (holding that the commission of criminal acts by a school director did not authorize his removal but, rather, his prosecution).

*Id.* at 18-19 (additional emphasis added) (footnotes omitted).

The Petitions base their removal requests on the alleged absence of legal authority for the School Boards' impositions of mask mandates. In response, the School Boards argue that the Petitions are legally insufficient because they allege misfeasance by the School Boards, but Section 318 allows removal only for nonfeasance – *i.e.*, failure or refusal to perform a specified mandatory statutory duty – and not for misfeasance. We agree with the School Boards.

The various versions of the removal provision in the progression of school law statutes, as quoted above, have all been substantially the same regarding the actions or inactions which may support removal of a school director. Accordingly, even decisions predating the enactment of the current School Code and Section 318 are probative of the limitations on judicial removal of school directors. Our Supreme Court has repeatedly stressed that only nonfeasance, not malfeasance, by school directors will allow a court to remove them from their elected offices. *See Kline Twp.*, 44 A.2d at 379 (applying Section 217 of the 1911 school law, holding that school directors could not be removed under that section for criminal conduct in accepting improper payments, and explaining that "[t]he entire tenor of Section 217 indicates that it is for nonfeasance and not for malfeasance or misfeasance[] in office that a director may be removed. He is removable not for doing evil things in office but for not functioning as a director in respect to his mandatory duties.");

10

*Ziegler's Appeal*, 194 A. 911, 912 (Pa. 1937) (applying Section 217 of the 1911 school law, holding that a school director's alleged acceptance of uncompensated services by students "plainly" would not support his removal, and explaining that the removal provision, although authorizing removal in the sound discretion of the common pleas court, restricts that discretion such that a court "must find some violation of the mandatory sections which prescribe the functions and duties of school directors . . .").

By contrast, this Court's analysis in *Hetherington*, in which this Court affirmed a removal order, illustrates the difference between nonfeasance and misfeasance for removal purposes under Section 318 of the School Code. In *Hetherington*, this Court upheld the removal of school directors who persistently refused or failed for two years to appoint a qualified superintendent after the previous superintendent's resignation. *See generally* 6 A.3d 6. The school directors did not interview a single candidate during that time and instead filed repeated requests with the Department of Education for a waiver of state qualification requirements in order to appoint the district's solicitor, who had no teaching or administrative experience, as the new superintendent. *Id.* Notably, the trial court in *Hetherington* based its removal decision on nonfeasance, observing that "efforts of the school board to seat a qualified superintendent were nonexistent" for two years. *Id.* at 11. Thus, the school directors failed to comply with their mandatory duty under Section 1071(a) of the School Code, which directs that "[t]he board of school directors in every school district shall, by a majority vote of all the members thereof, elect a properly qualified person as district superintendent . . . ." 24 P.S. § 10-1071(a); *see Hetherington*, 6 A.3d at 12. In affirming the trial court's order removing the school directors, this Court concluded that the specific requirement of Section 1071(a) that

11

a school board "shall elect a properly qualified person as district superintendent . . . sets forth a mandatory duty to elect a qualified person as district superintendent." *Hetherington*, 6 A.3d at 12. Further, in light of the provision of Section 1079 of the School Code, which allows a school board to appoint a temporary superintendent for one year, but only if it is "impossible or impracticable to immediately fill a vacancy . . . ," this Court concluded that "the school board must elect a qualified person immediately to fill a vacancy for superintendent unless the school board finds that it is impossible or impracticable to do so, in which case the school board may appoint an acting superintendent to serve one year." *Id.* at 12-13 (citing 24 P.S. § 10-1079). Persistent failure or refusal to comply with this requirement constituted a failure to perform a mandatory duty and, therefore, justified removal of the school directors. *See id.* at 13-14.

Comparing the nature of the conduct at issue in our Supreme Court's opinions cited above with the conduct described in this Court's opinion in *Hetherington*, it is apparent that the allegedly unauthorized mask mandates at issue here cannot be viewed as nonfeasance. First, enactment of a mask mandate is affirmative conduct, which, even if improper, would constitute malfeasance, not nonfeasance. Further, Appellants here particularly challenge the School Boards' retention of the mask policies after health authorities removed their mandatory masking directives. That choice by both of the School Boards was plainly an exercise of discretion, which, by definition, cannot constitute the failure to perform any act *mandated* by the School Code.

Moreover, we disagree with Appellants' premise that the School Boards lacked inherent authority to impose mask mandates. In *Commonwealth v. Detwiler* (Pa. Super., Nos. 390 MDA 2023, 391 MDA 2023, & 392 MDA 2023, filed

Jan. 4, 2024), 2024 Pa. Super. Unpub. LEXIS 30,[10] *appeal denied*, 322 A.3d 1286 (Pa. 2024), *cert. denied sub nom. Detwiler v. Pa.*, ___ S. Ct. ___, 145 S. Ct. 1056 (2025), the three appellants had been convicted of the crime of defiant trespass after they refused to wear masks or leave a school board meeting, in defiance of the school district's mask mandate. On appeal, they argued, in part, that the trial court had erred by instructing the jury that the school board was legally authorized to impose a mask mandate. They insisted "the trial court's instruction was an inaccurate statement of law because the school board expressly lacked the authority to issue a mask mandate pursuant to *Corman*. . . ." *Detwiler*, 2024 Pa. Super. Unpub. LEXIS 30, at *13. Quoting, relying on, and expressly adopting the trial court's opinion, the Superior Court stated:

> [A] court is not a "super school board" which exists to second[-]guess rules and regulations promulgated by school boards. As in [*Duffield v. Williamsport School District*, 29 A. 742 (Pa. 1894),] and [*Jacobson v. Massachusetts*, 197 U.S. 11 (1905)], where the courts noted that vaccinations may or may not have prevented smallpox, we can accept for purposes of this argument that masks may or may not mitigate the spread of COVID-19. We are not taking a position on that in this [o]pinion. As stated in *Duffield*, we are not adjudicating whether the wearing o[f] masks [is] "absolutely right or not." . . . [A]gain to quote *Duffield*, we are to determine whether the [m]ask [m]andate was "reasonable in view of the [then-]present state of medical knowledge and the concurring opinions of the various boards and officers charged with the care of the public health." *Duffield*, 29 A. at 743. More specifically, we find that one reasonable

---

[10] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018). Further, unreported opinions of the Superior Court filed after May 1, 2019 may be cited as persuasive authority pursuant to Section 65.37(B) of the Superior Court's Internal Operating Procedures, 210 Pa. Code § 65.37(B).

> interpretation of the science at the time was that masks
> inhibit the spread of COVID-19, especially in view of the
> CDC Guidelines in effect at the adoption of the [m]ask
> [m]andate[,] which expressed one scientific school of
> thought. . . . [T]he [school b]oard is the entity vested with
> broad discretion to make these policy decisions. . . . It is
> not the function of this court to second-guess policies of
> the [school b]oard.

*Id.* at *14-15. We find the reasoning of the trial court and Superior Court in *Detwiler* persuasive and adopt it here.

Appellants also maintain that even if the School Boards were originally authorized to impose the mask mandates, they had no authority to keep the mandates in place after Secretary Levine and Erie County had lifted their mandates. We discern no merit in this argument. In *Duffield*, cited by the *Detwiler* courts, a school board received a request from the local board of health to require any student attending school to be vaccinated against smallpox. The school board imposed the requested requirement "considering [the department of health's] communication 'and from the general alarm prevailing in the city over the report that a case of smallpox was in the city. . . .'" *Duffield*, 29 A. at 742. In upholding the school board's authority to require vaccinations for all students attending school, our Supreme Court reasoned:

> Is the regulation now under consideration a reasonable
> one? That is to be judged of in the first instance by the
> city authorities and the school board. It is only in the case
> of an abuse of discretionary powers that the court will
> undertake to supervise official discretion. Vaccination
> may be, or may not be, a preventive of smallpox. That is
> a question about which medical men differ and which the
> law affords no means of determining in a summary
> manner. A decided majority of the medical profession
> believe in its efficacy. The municipal regulations of many,
> and I have no doubt of most, of the cities of this state and
> country, provide for it. In the present state of medical

14

knowledge and public opinion upon this subject it would be impossible for a court to deny that there is reason for believing in the importance of vaccination as a means of protection from the scourge of smallpox. The question is not one of science in a case like the present. We are not required to determine judicially whether the public belief in the efficacy of vaccination is absolutely right or not. We are to consider what is reasonable in view of the present state of medical knowledge and the concurring opinions of the various boards and officers charged with the care of the public health. The answers of the city and the school board show the belief of the proper authorities to be that a proper regard for the public health and for the children in the public schools, requires the adoption of the regulation complained of. They are doing, in the utmost good faith, what they believe it is their duty to do; and though the plaintiff might be able to demonstrate by the highest scientific tests that they are mistaken in this respect, that would not be enough. It is not an error in judgment, or a mistake upon some abstruse question of medical science, but an abuse of discretionary power, that justifies the courts in interfering with the conduct of the school board or setting aside its action.

*Id.* at 742-43.

Appellants seek to undermine the persuasiveness of *Duffield* in two ways. First, Appellants assert that the Disease Control and Prevention Law of 1955,[11] which addresses various aspects of disease control, abrogates the holding of *Duffield* because its specific provisions control over the general powers given to school boards under the School Code. Appellants reason that because the Disease Control and Prevention Law applies to municipalities and excludes school districts from the definition of a municipality, a school district cannot exercise the authority conferred on municipalities under that statute. Appellants' Br. at 19-20. However,

---

[11] Disease Prevention and Control Law of 1955, Act of April 23, 1956, P.L. (1955) 1510, *as amended*, 35 P.S. §§ 521.1 - 521.21.

this assertion does not advance Appellants' position. It merely establishes that school boards are not subject to the Disease Control and Prevention Law.

Second, Appellants claim that, "in *Duffield*, it was the City of Williamsport . . . that set forth a vaccination requirement, and the school district in that case merely adopted a policy consistent with the city's disease control measure adopted through a municipal ordinance." Appellants' Br. at 20. We disagree. As set forth above, the school district's vaccination policy in *Duffield* was not based on the city's ordinance, but on the local department of health's recommendation and on "the general 'alarm prevailing in the city over the report that a case of smallpox was in the city.'" *Duffield*, 29 A. at 742.

We observe that Secretary Levine, in lifting the statewide positive mandate, still urged that masking should continue as appropriate. *See Corman*, 266 A.3d at 457 (citing DOH Press Release). We agree with the conclusion in *Detwiler* that a school board acts within its discretion in making a policy decision to implement a mask mandate. The School Boards' authority to exercise their discretion in imposing the mask mandates did not depend on whether the relevant health authorities were mandating masks or merely suggesting them.

We also observe that, contrary to the assertion of the *Detwiler* appellants, *Corman* does not stand for the proposition that a school board is not authorized to impose a mask mandate. In *Corman*, our Supreme Court, affirming this Court's order, held that where the Department of Health issued a mask mandate in the absence of an ongoing emergency declaration by the Governor, it had to do so by a properly promulgated regulation, and because it failed to do so, its 2021 mask mandate was void *ab initio*. *See generally Corman*, 266 A.3d 452. Notably, in reaching that conclusion, our Supreme Court opined that "[q]uestions of efficiency

16

and practicality in 'dynamic and fact-intensive' matters of public health and disease control are policy judgments" that should be left to elected, politically accountable policymakers, the latitude of whose discretion in such matters must be "especially broad" and should not be second-guessed by the judiciary. *Id.* (quoting *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14, (2020) (Roberts, C.J., concurring in denial of application for injunctive relief)). The School Boards are elected, politically accountable policymakers, and Appellants' recourse if they disagree with the School Boards' policy decisions lies in the ballot box, not in the courts.

Notably, even were this Court to agree with Appellants that the School Boards' mask mandates constituted a failure to perform some duty mandated by the School Code, that still would not entitle Appellants to relief. Our Supreme Court has stressed the discretion of a common pleas court to deny a removal request, explaining that "[e]ven for a breach of a mandatory duty under the School Code, a court is not required to remove a board of directors; it is simply empowered to do so." *Jenkins Twp. Sch. Dirs.' Removal Case*, 25 A.2d 158, 162 (Pa. 1942). Here, as discussed above, the mask mandates represented the School Boards' exercise of their discretion and judgment as to how best to safeguard the health of students and staff by helping to avoid the spread of COVID-19, a newly emerging and highly dangerous disease that had created an ongoing pandemic and was the subject of rapidly evolving and hotly debated scientific study. We discern no abuse of the Trial Court's discretion in its dismissal of the Petitions.

17

## B. Failure to Provide for Religious Exemptions

Appellants also posit that masks are medical treatment and therefore should be subject to potential religious exemptions, which the School Boards' mask mandates did not provide. However, we need not reach this argument. Even if Appellants' argument were otherwise meritorious, it would not support removal of the School Boards because, under the misfeasance/nonfeasance analysis above, a legally defective school board policy would constitute malfeasance, not nonfeasance. Therefore, even if mask mandates were defective or invalid, that would not support removal of the School Boards.

Moreover, if we were to reach this argument, we would reject it. We cannot agree with Appellants' suggestion that a mask constitutes medical treatment that could trigger a right to a religious exemption.

In *J.W. v. Acting Secretary of the Pennsylvania Department of Health* (Pa. Cmwlth., No. 297 M.D. 2021, filed Nov. 10, 2021),[12] a majority of this Court, *en banc*, dismissed a petition asserting religious exemptions from the mask mandate of the Acting Secretary of Health. In *J.W.*, as in the consolidated cases here, the petitioner argued that masks constitute medical treatment that triggers a right to refuse that treatment in the free exercise of religion. This Court's majority concluded that the petition was moot in light of the *Corman* decision's holding that a mask mandate was void *ab initio*; accordingly, the majority did not reach the merits of the asserted religious exemption. *Id.*, slip op. at 6. However, Judge Michael H. Wojcik authored a concurring and dissenting opinion concerning the merits which

---

[12] This unreported decision is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

18

we find persuasive in its analysis of the medical treatment issue here. Judge Wojcik reasoned that

> the wearing of masks in the congregate setting of school entities is rationally related to the government objective of preventing the spread of COVID[-]19[.] [A mask mandate] does not compel medical treatment and merely wearing a mask does not address any medical malady of the wearer[; r]ather, the covering of one's nose and mouth is designed to safeguard other citizens. . . . Indeed, were we to accept Petitioners' allegation in this regard, every surgeon would be receiving medical treatment every time he or she practiced his or her medical skill on every patient in every hospital across this country.

*Id.*, slip op. at 4 (Wojcik, J., concurring and dissenting) (internal quotation marks and citations omitted). We agree with Judge Wojcik's cogent reasoning that wearing a mask does not constitute receiving medical treatment.

## C. Compliance with Verification Requirements

Section 318 of the School Code, which is set forth more fully above, authorizes a petition for removal of school directors, specifying that "any ten resident taxpayers in the district . . . may present their . . . petition in writing, *verified by the oath or affirmation of at least three such resident taxpayers . . . .*" 24 P.S. § 3-318 (emphasis added). The School Boards asserted that Appellants in the consolidated cases failed to comply with the verification requirement. The Trial Court agreed regarding the Millcreek petition, finding that it contained the signature of just one petitioner purporting to verify on behalf of the others, which was not sufficient. Trial Ct. Op. at 9-10. However, the Trial Court found that a similar defect originally existing in the North East petition had been subsequently cured by the filing of a compliant verification. *Id.* at 10.

19

We need not reach this argument, because the Trial Court's dismissal of the Petitions was proper on other grounds, as discussed in the previous sections. However, we note that were we to reach this issue, we would agree with the Trial Court's succinct analysis concerning the defective verification in the Millcreek petition.

## D. Denial of Cost Awards

The School Boards assert entitlement to litigation costs under Section 318 of the School Code. Section 318 gives a trial court broad discretion in assessing costs, providing simply, in pertinent part: "The court shall impose the cost of such proceedings upon the petitioners, or upon the school directors, or upon the school district, or may apportion the same among them as it shall deem just and proper." 24 P.S. § 3-318.

The Trial Court initially denied the School Boards' requests for costs without explanation. *See* Trial Ct. Op. at 10. In its subsequent opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a), the Trial Court explained:

> This court reads the provision to be consistent with the general policy of the American Rule that shifting of costs is exceptional and unwarranted under the circumstances of this case. Here, the court did not find the conduct of [Appellants] supported an award of costs. [Appellants], as taxpayers in their respective school districts, brought a claim under 24 P.S. § 3-318 of the School Code, based on a novel issue regarding COVID-19 protocols and procedures enacted in the schools. The [c]ourt notes these issues are still having a lingering effect on our court systems, and even at this time, there still exists little legal guidance in assessing claims dealing with the effects of the pandemic. While this court may not have found in favor of [Appellants], there is nothing to suggest the Petition

20

> was brought in bad faith. The dismissal of the Petition itself is not dispositive of a cost assessment imposition. Therefore, under the facts of this case, the imposition of costs was not determined by the trial court to be just and proper.

*Prozan v. Millcreek Twp. Sch. Dist. Bd. of Dirs.* (Erie, C.P., Nos. 10937-2022 & 90026-2022, filed Dec. 7, 2022) (1925 Op.) at 4-5.

The Trial Court was correct in positing that prevailing party status is not determinative of entitlement to a cost award under Section 318 of the School Code. *See, e.g.*, *Kline Twp.*, 44 A.2d at 380 (reversing removal of school directors who engaged in criminal conduct but imposing costs on them). The School Boards assert that the Trial Court erroneously required bad faith on the part of Appellants before it would award costs. However, our review of the Trial Court's analysis indicates that it considered several factors commonly reviewed in exercising discretion as to whether to award costs. While observing that there was no indication of bad faith by Appellants, the Trial Court also pointed to the "general policy of the American Rule" under which each party normally bears its own litigation costs, as well as the unsettled and newly-evolving body of law pertaining to COVID-19 protocols. 1925 Op. at 4-5. The Trial Court determined that shifting costs here would not "be just and proper." We discern neither legal error nor a palpable abuse of discretion in that determination. Accordingly, it will not be disturbed on appeal.

### IV. Conclusion

Based on the foregoing discussion, we affirm the Trial Court's order dismissing the Petitions and denying the School Boards' requests for cost awards.

_____
CHRISTINE FIZZANO CANNON, Judge

Judge Wallace did not participate in the decision in this case.

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Troy Prozan                                    :
                                               :
          v.                                   :
                                               :
Millcreek Township School                      :
District Board of Directors                    :
                                               :
Erin Beckes, Dan Reese,                        :
Dana Richter, Theresa Richter,                 :
Cliff Smathers, Grace Smathers,                :
Kirra Tupper, Carolyn Brown,                   :
Glenn Craig, Eve Frank,                        :
Sharon Jones, and Ted Jones                    :
                                               :
          v.                                   :
                                               :
North East School District                     :
Board of Directors                             :
                                               :
Appeal of: Troy Prozan and Erin                :          No. 1094 C.D. 2022
Beckes                                         :
                                               :
Troy Prozan                                    :
                                               :
          v.                                   :
                                               :
Millcreek Township School District            :
Board of Directors                             :
                                               :
Erin Beckes, Dan Reese,                        :
Dana Richter, Theresa Richter,                 :
Cliff Smathers, Grace Smathers,                :
Kirra Tupper, Carolyn Brown,                   :
Glenn Craig, Eve Frank,                        :
Sharon Jones, and Ted Jones                    :
                                               :
          v.                                   :
                                               :
North East School District Board              :
of Directors                                   :

Appeal of: Millcreek Township School : No. 1115 C.D. 2022
District Board of Directors and North :
East School District Board of Directors :

Erin Beckes, Carolyn Brown, Daniel :
Reese, Sharon Jones, Eve Frank, :
Kirra Tupper, Glenn Craig, Theresa :
Richter, Dana Richter, Ted Jones, :
Grace Smathers and Clifford :
Smathers :
                                       :
            v.                         :
                                       :
North East School District Board :
of Directors,                    : No. 1225 C.D. 2022
                     Appellant   :

Erin Beckes, Carolyn Brown, Dan :
Reese, Sharon Jones, Eve Frank, :
Kirra Tupper, Glenn Craig, Theresa :
Richter, Dana Richter, Ted Jones, :
Grace Smathers and Clifford :
Smathers :
                                       :
            v.                         :
                                       :
North East School District Board :
of Directors                     :
                                 : No. 1295 C.D. 2022
Appeal of: Erin Beckes           :

# **O R D E R**

AND NOW, this 9th day of May, 2025, the order of the Court of Common

Pleas of Erie County, Pennsylvania, dated September 13, 2022, is AFFIRMED.

_____

CHRISTINE FIZZANO CANNON, Judge